[Civ. No. 19775. First Dist., Div. Two. Oct. 24, 1961.]

JOE K. ELLSWORTH et al., Appellants, v. F. A. MARSHALL et al., Respondents.

Jay Graves and Graves, MacLeod & Gifford for Appellants.

Douglas G. Cowan and Carl B. Noecker for Respondents.

AGEE, J.—Plaintiffs (husband and wife) appeal from a judgment holding that a homestead declared by them on certain real property was invalid because neither resided on the premises at the time of such declaration and that, even if this requirement was met, plaintiffs are estopped from asserting any rights thereunder as against defendants.

On January 28, 1952, plaintiffs executed a promissory note and a deed of trust on the real property in question as security for payment thereof. On December 18, 1957, foreclosure proceedings under the deed of trust were started by the filing of a notice of default. On March 3, 1958, plaintiffs recorded a "Declaration of Homestead" on the property. On March 4,

1958, defendant F. A. Marshall obtained a money judgment against plaintiffs for the sum of $17,607. An abstract thereof was recorded on the same date. On June 23, 1958, defendant F. A. Marshall bought up the note and deed of trust and received an assignment thereof. On July 3, 1958, defendant F. A. Marshall bid in the real property at the foreclosure sale for $16,500; the amount then due on the note was $9,035.64.

Plaintiffs then brought this action to recover the differential or surplus of $7,464.36, on the theory that said amount was exempted to them under the homestead law. Marshall, of course, would be entitled to retain said surplus, *as against plaintiffs*, in partial satisfaction of his judgment lien (34 Cal. Jur.2d § 470, pp. 150-151) *unless* said homestead is held to be valid. As plaintiffs' counsel stated at the trial: ". . . In the absence of the homestead the seller [meaning Marshall] could, I take it, retain the balance of the money on account of his judgment. The question is whether the homestead is in between."

The homestead was declared by plaintiffs on March 3, 1958, and recorded at 9:40 o'clock a.m., on the same day. They testified at the trial that they had resumed residence on the premises on the afternoon of the previous day.

Plaintiffs moved away from the premises in September or October 1957. There was no indication at that time of any intent to return. Most of the furniture was moved out. The stove was left but plaintiffs bought another one after they had moved away. The telephone was disconnected and the electricity and water were turned off. The mailing address was changed from that of the premises, located in Walnut Creek, to an address in Lafayette.

During the period they were away, plaintiffs testified that they went on vacations to Mexico and other places; that they returned on or about January 10, 1958, and lived at Santa Cruz until March 2, 1958.

Concerning the latter date, which was a Sunday, plaintiff wife testified that she and her husband moved back in with "only enough [furniture] to sleep on that night" and that "Joe [husband] brought a little out each time he had a chance, in the station wagon." Also, that this moving in of the furniture "went on all summer." The water was not turned on by the water company until April 8, 1958, although there was testimony that unauthorized use of it had been made prior to that date. Plaintiff husband testified that he had turned on the water "because we could live without elec-

tricity but we needed the water to drink. . . .'' The telephone service was never resumed.

The question of the validity of the residence of plaintiffs on the premises at the time of the declaration of homestead was one of fact to be determined by the trial court and its finding thereon should not be disturbed on appeal if there is substantial evidence to support it. (4 Cal.Jur.2d § 606, p. 485.)

In *Tromans* v. *Mahlman,* 92 Cal. 1, 8 [27 P. 1094, 28 P. 579], it is said: ''To effect its purpose, the [homestead] statute has been liberally construed in some respects, but the requirement as to residence at the time the declaration is filed has been strictly construed. Thus this court has many times used and emphasized the word 'actually,' to show that the residence must be real, and not sham or pretended. . . . Here it clearly appears from the evidence that the respondents went to Haywards, not to make their home or place of abode there, but only to spend a night or two, and then return to their home in San Francisco. . . .'' The judgment of the trial court upholding the validity of the declaration of homestead was reversed. On the retrial it was held that the evidence did not show residence upon the premises within the meaning of the homestead law. This holding was affirmed on appeal (*Tromans* v. *Mahlman,* 111 Cal. 646 [44 P. 327]), the court stating, at page 647: ''The physical fact of her occupancy, as well as the intention with which she occupied the house, were both elements to be considered in determining actual residence, and the court was not bound to accept her statement that she intended to reside thereon as conclusive, if other facts to which she testified were inconsistent with such intention. Whatever inconsistency there was between these facts and her statement of her intention presented merely a conflict of evidence, on which the decision of the trial court was final. Its decision upon this conflict of evidence that she did not reside there is conclusive upon this court.''

Both of the *Tromans* decisions were quoted from with approval in *Lakas* v. *Archambault,* 38 Cal.App. 365, 371-372 [176 P. 180], wherein the following was stated: ''In that case [*Tromans*] the time of occupancy was much shorter than in the present case. But, as we view the statute, the time of occupancy prior to or after the declaration is not the only essential element. The physical fact of the occupancy and the intention with which the premises are occupied 'are both elements to be considered in determining the actual residence.'

The trial court found that defendant did not move to the premises in question with the intention to make the house there erected his home or residence. The defendant testified that such was his intention, but the court was not bound to accept his testimony as conclusive if the other facts and circumstances were inconsistent with such intention. In viewing these facts and circumstances we must, in support of the judgment, give them the interpretation given to them by the trial court if such interpretation is reasonable, *even though a different interpretation, favorable to defendant, might also be reasonably given to them. . . .*'' (Emphasis added.)

To the same effect as the excerpts quoted from the cases cited above, see *Bullis* v. *Staniford,* 178 Cal. 40, 45 [171 P. 1064], and *Johnston* v. *DeBock,* 198 Cal. 177, 181 [244 P. 330].

While the very purpose of the homestead law is to protect the property from existing debts, the declarant must have ''. . . a *bona fide* intention to make the place his residence, his home. . . .'' (*Lakas* v. *Archambault, supra,* p. 373.) In the *Lakas* case, there was testimony by a witness Kirkins that the declarant (defendant) had stated to him that he had a good lawyer and that he was going to ''beat'' plaintiff's levy of attachment by living in the house on the property and declaring a homestead thereon. The defendant testified that he lived on the property with his grandmother for a period of five weeks and that they moved back to town only because of her bad health. He also testified that he moved to the premises in question with the intention of making the house thereon his residence. The court said, at page 373: ''. . . This intention was not expressed by him to Kirkins or anyone else, and, disregarding the defendant's testimony as to his intention, as the court must have done, we cannot say the court was not justified in its conclusion.''

An analogous situation existed in the instant case. In 1955, defendant F. A. Marshall had filed suit against plaintiffs herein for money loaned by him to them. There were lengthy negotiations between respective counsel which finally culminated in an ''Offer of Judgment'' prepared by the then counsel for plaintiffs. This provided that judgment in favor of Marshall and against plaintiffs could be taken in the sum of $17,607, plus certain interest and costs. The covering letter to Marshall's counsel, dated February 21, 1958, contained the condition ''that in no event will execution issue until

after March 4, 1958, as per our agreement." Thus, plaintiffs herein knew that any equity in the property which might remain after the foreclosure sale under the deed of trust would be wiped out by execution of the *Marshall* judgment. Hence, the moving in on Sunday afternoon, March 2, 1958, the preparation of a homestead declaration, dated March 3, 1958, by counsel other than had been representing plaintiffs in the negotiations with Marshall's counsel, together with the hasty recording of the declaration on Monday, March 3, 1958, at 9:40 o'clock a. m., could have been considered by the trial court as an indication that the sole motive of the plaintiffs in making and recording said declaration was to "beat" the expected execution on the *Marshall* judgment and that they had no bona fide intention to make the premises their home or residence. (*Lakas* v. *Archambault, supra.*)

As was said in *Kraut* v. *Cornell,* 175 Cal.App.2d 528, 532 [346 P.2d 438] : "[T]he trier of fact may reject the uncontradicted testimony of a witness provided he does not act arbitrarily. [Citing authority.] Relevant in this respect are many considerations: interest of the witness in the result of the case, his motive, the manner in which he testifies, and the contradictions appearing in the evidence. [Citing authorities.]"

Plaintiffs rely upon *Skinner* v. *Hall,* 69 Cal. 195 [10 P. 406]. There the declarant's home had partially burned and he was forced to move his family to his mother's house, which was next door. After completing the repairs to the house, declarant did not have enough money to replace the furniture. He therefore rented out the house on a monthly basis. On January 24, 1881, he gave up part of the rent in return for the use of one room, in which he slept from then on. On February 15, 1881, his wife and child joined him and thereafter they all slept in this room. In May 1881, the tenant gave up the house and declarant's family stayed. The homestead under attack was filed by declarant on January 25, 1881. The trial court found in favor of the declarant. The holding of the Supreme Court is stated as follows (p. 198) : "Was the plaintiff actually residing on the premises in question when his declaration was filed? After carefully considering the findings *we are unable to say that he was not.*" (Emphasis added.) This holding simply recognizes that the question is primarily one of fact to be determined by the trial court and that its finding thereon will not be disturbed on appeal unless there is no substantial evidence to support it. It does not hold,

even under the facts presented there, that the trial court was *required* to so find.

▮▮▮ We hold that the finding of the trial court in the instant case that neither of the plaintiffs was actually residing on the premises at the time of the declaration and recordation of the homestead is supported by substantial evidence and that said homestead is therefore invalid.

This being so, it is unnecessary to discuss the estoppel issue. The judgment for defendants is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.