**In re Robert & Betty DODGE, Debtors.**

**Bankruptcy No. 288–03582–B–7.**
**Motion No. ELB–1.**

United States Bankruptcy Court,
E.D. California.

March 26, 1992.

---

Bruce Hudson Towne, Law Offices of Earl L. Baer, Citrus Heights, Cal., for debtors.

John P. Garcia, Law Offices of Jordan C. Walker, Sacramento, Cal., for judgment creditor Summer Hills Plaza.

### MEMORANDUM DECISION ON DEBTORS' MOTION TO REOPEN CASE AND AVOID JUDICIAL LIEN

DAVID E. RUSSELL, Bankruptcy Judge.

The Debtors have filed a motion to reopen their case and avoid a judicial lien encumbering their former residence. Judgment lienholder Summer Hills Plaza ("SHP") opposes the motion. After entertaining oral argument at the hearing the court took the matter under submission.

The following facts are not in dispute. In July of 1987, the Debtors recorded a "Declaration of Homestead" in the official records of Sacramento County for their house at 6025 McMahon Drive, Sacramento, California. In January of 1988 SHP obtained two default judgments, one against each Debtor, in the Sacramento Superior Court. SHP recorded two abstracts of judgment for $45,334.36 [1], one in respect to each judgment, with the Sacramento County Recorder in January of 1988. On May 31, 1988, the Debtors filed their voluntary chapter 7 petition. On their schedules of assets and liabilities, the Debtors listed their house at 6025 McMahon Dr., Sacramento, and alleged that its fair market value was $55,000. The Debtors did not schedule any debts secured by their house on schedule A–2, nor did they schedule SHP as a creditor, although its attorneys, Walker and Crawford, were listed as the holder of an unsecured claim of $48,000 on schedule A–3. On schedule B–4, they claimed a homestead exemption of $45,000.

The Debtors have not filed any amendments to their schedules. However, no creditor or interested party objected to their claim of homestead exemption. The court granted the Debtors their discharge on October 17, 1988, and the bankruptcy case was closed on November 7, 1988.

The Debtors sold their house in 1991. They obtained a preliminary title report on the property dated March 20, 1991. That report contained 9 exceptions (encumbrances), the last one of which was for SHP's abstracts of judgment. The 8th exception was for a deed of trust, the last assignment of which was recorded on July 14, 1986 [2]. For some unknown reason, the

---

1. Each abstract was in the amount of $45,334.36. It is not clear why two judgments were obtained. One judgment against both Debtors on joint and several liability would seem to be more appropriate, since the total damages were only $45,334.36 and not twice that amount.

2. This obligation should have been listed on the Debtors' A–2 schedule in the bankruptcy. Page 3 of the report, listing exceptions 3 through 7, inclusive, and the first part of exception 8, was missing from the copy attached to Mrs. Dodge's declaration of November 13, 1991, so the court

Debtors proceeded to sell the property before attempting to avoid SHP's judgment liens. In order to close escrow, then, they had to negotiate with SHP. SHP agreed to release its liens against the house provided that the net proceeds of the sale were deposited into the client trust account maintained by the Debtors' attorney, and provided further that no disbursements could be made therefrom without SHP's consent or order of this court.

Escrow for the sale of the house closed May 31, 1991. Upon the request of the court, the Debtors provided a copy of the escrow holder's closing statement, which revealed, inter alia, that the house had been sold for $85,000, that Fireman's Fund had been paid $43,861.47 in principal and $760.92 in interest[3], and that the net proceeds due to the Debtors-sellers was $31,-084.86. The problem now before the court is to determine the respective rights of SHP and the Debtors to those proceeds.

■■■■ SHP objects to the Debtors' motion to reopen their case. The Bankruptcy Code empowers the bankruptcy court to reopen a case to "accord relief to a debtor". 11 U.S.C. § 350(b). The court's power is not circumscribed by any time limit. As this court has previously suggested, such motions should be routinely granted because the case is necessarily reopened to consider the underlying request for relief. *In re Corgiat* 123 B.R. 388, 392, 393 (Bankr.E.D.Cal.1991).

SHP next disputes the validity of the Debtors' claim to a homestead exemption. Although the time for objecting to exemptions has long since passed[4], the Debtors' motion to avoid SHP's lien necessarily raises the issue of whether the liened property is exempt for lien avoidance purposes. *In re Montgomery,* 80 B.R. 385 (Bankr. W.D.Tex.1987); *In re Smith,* 119 B.R. 757 (Bankr.E.D.Cal.1990); *In re Frazier,* 104 B.R. 255 (Bankr.N.D.Cal.1989). SHP points out that the Debtor's Declaration of Homestead, which was signed by both Debtors, was notarized in Monterey County, that the return address on the Declaration was an apartment in Salinas, California, and that both Debtors were served with SHP's state court complaint at that apartment in Salinas on November 30, 1988. Furthermore, in their answer to question 5.c on the Statement of Affairs filed with their petition, which asks petitioners to explain the unavailability of any books and records, the Debtors stated that some had been "lost in move, 6/1/87." These facts, SHP argues, show that the Debtors did not meet the residency requirements for a declared homestead of California Code of Civil Procedure[5] § 704.920 ("'(a) dwelling in which an owner or spouse of an owner resides may be selected as a declared homestead ...'"), nor the continuous subsequent residency required by § 704.710(c), citing *In re Anderson,* 824 F.2d 754 (9th Cir.1987) and *In re Yau,* 115 B.R. 245 (Bankr.C.D.Cal.1990).

However, SHP did not object to the Debtors' contentions that (1) although Betty Dodge started working in Salinas, California in March of 1987 and continued to do so until well after the bankruptcy petition was filed, she only stayed there four days a week in a rented one bedroom apartment while working 10 hour shifts and returned to the McMahon Drive house in Sacramento on the weekends, and that (2) during the same time period Robert usually stayed in Sacramento at McMahon Drive, except for occasional trips to Salinas to stay with Betty. Debtors do not dispute that in early 1989 they rented a two bedroom apartment in Salinas and moved there so that Betty could spend more time with Robert, who suffered from emphysema.

---

was unable to determine the name of the lender or the amount of the loan.

**3.** This apparently was the obligation the Debtors failed to list on their schedule A–2.

**4.** Federal Rule of Bankruptcy Procedure 4003(b), in effect, limits the filing of objections to exemption claims to within 30 days after the conclusion of the first meeting of creditors, or 30 days after an amendment to the list of exemptions.

**5.** All subsequent statutory references are to the California Code of Civil Procedure (West, 1987) unless otherwise noted.

The California homestead statutes are set forth in Part 2 (Civil Actions), Title 9 (Enforcement of Judgments), Division 2 (Enforcement of Money Judgments), Chapter 4 (Exemptions) of the California Code of Civil Procedure. Chapter 4 is comprised of five Articles. Article 4 (Homestead Exemption), commencing with § 704.710, sets forth debtors' rights under the basic exemption (sometimes referred to the "undeclared" or "automatic" exemption). Article 5 (Declared Homesteads), commencing with § 704.910, sets forth the additional rights of those debtors who qualify and choose to record a Declaration of Homestead on their residence.

■ The basic homestead protects the debtor and the debtor's family from the sale of their dwelling to enforce a money judgment except pursuant to a court order. § 704.740(a). Even if the levying creditor is able to obtain a court order of sale, the property cannot be sold unless a bid is received that exceeds the *total* of (1) *all* liens and encumbrances on the property *and* (2) the amount of the court determined homestead. § 704.800(a). Finally, if the homestead is sold, or is damaged or destroyed or is acquired for public use, the homestead proceeds are exempt for a period of six months from actual receipt to permit the debtor to reinvest them in a new homestead. § 704.720(b).

Those debtors fortunate enough to own "any interest in real property" that is also a "dwelling" may choose the additional benefits of a declared homestead under Article 5 of the homestead statutes. § 704.910(c). However, § 704.970 subjects Article 5 declared homesteads to levy and execution just like the Article 4 basic homesteads and with only the same rights and benefits as provided in Article 4. In order to prove the right to an exemption under either Article 4 or Article 5 in the court proceedings following the levy, a debtor must show that his or her residence is a "homestead" as defined in C.C.P. § 704.710(c). *In re Anderson*, 824 F.2d at 759.

■ § 704.710(c) breaks down its definition of "homestead" into two parts; an unsold dwelling and a dwelling obtained with the exempt proceeds from a previously taken homestead. The first definition is set forth in the first sentence of the section, and reads as follows:

> "Homestead" means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided **on the date the judgment creditor's lien attached** to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court's determination that the dwelling is a homestead. (Emphasis added).

While the lien created by the recordation of an abstract of judgment will not attach to a declared homestead unless the value of the homesteaded property exceeds the total of all liens and encumbrances and the amount of the homestead exemption because of § 704.950, there is no prohibition against the attachment of an execution lien. An execution lien is created when property is levied upon under a writ of execution. § 697.710. What this means in the context of a bankruptcy proceeding, where the filing of the petition is tantamount to a levy on the debtor's property, is that the debtor or the debtor's spouse must reside in the dwelling when the petition is filed to be entitled to a homestead exemption whether the homestead is claimed under either Article 4 or Article 5. Since it was stipulated in *Anderson* that the debtors did not reside on the property when their bankruptcy petition was filed, their homestead exemption claim had to be denied [6].

**6.** One issue the *Anderson* case did not address was the nature of the benefit of the provision in § 704.950(a) that judgment liens do not attach to declared homesteads. One possible benefit is that debtors need not reside on the homesteaded premises on or after the date a judgment creditor creates a judgment lien by recording an abstract or certified copy of the judgment, because the judgment lien does not *attach* until the equity in the property exceeds all liens, encumbrances and the homestead amount. Thus, as long as there is insufficient equity and provided that no creditor levies under a writ of attachment or execution, the declared homestead is safe until the debtors once again reside on the homesteaded premises.

In the present case, the issue of residency is disputed. The Debtors' lifestyle was the same from March of 1987 until after their petition was filed. In this case, then, the answer to the question of whether the Debtors resided on McMahon Drive under the homestead definition would be the same at all relevant points of time; when they recorded their Declaration of Homestead, when SHP recorded its abstracts of judgment or when their bankruptcy was filed. The answer would also be the same at the time they filed their bankruptcy whether or not they had a valid declared homestead.

▪ The essential factors in determining residency for homestead purposes are physical occupancy of the property and the intent to live there. *Ellsworth v. Marshall*, 196 Cal.App.2d 471, 16 Cal.Rptr. 588 (1961). Federal Rule of Bankruptcy Procedure 4003(c) places the burden of proof on the party objecting to a claim of exemption. While the facts raised by SHP prove that the Debtors did not physically occupy the house on McMahon Drive all the time, they are not sufficient to overcome the Debtor's contentions that the absences were temporary. The California legislature amended § 704.710(c) in 1983 to delete the requirement of *actual* residency on the date the automatic homestead exemption claim is made. The deletion was intended to make clear that a temporary absence from the residence, for, e.g., vacation or hospitalization, would not destroy the characteristic of the residence as the principal dwelling. 17 Cal.L.Rev.Comm. Reports 854 (1983). A temporary absence of a few days at a time for employment away from home seems to fit within this category of temporary absences as well. Therefore, the court concludes that the debtors' claim of a homestead exemption pursuant to § 704.710 et seq. is valid.

▪ The amount that a debtor may claim exempt is governed by § 704.730. When the Debtors filed their petition in 1988 that section provided in relevant part:

(a) The amount of the homestead exemption is one of the following:

(1) Thirty thousand dollars ($30,000) unless the judgment debtor ... is a person described in paragraph (2) ...

(2) Forty-five thousand dollars ($45,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit ...

"Family unit" was defined in § 704.710(b)(1) to mean a debtor and his spouse, if they reside together in the homestead property. The evidence of record is that the Debtors were married and, except for temporary absences, resided together in their home at the time this bankruptcy case was filed. Hence, they were eligible to claim a maximum exemption of $45,000.

▪ The Debtors' eligibility to claim a homestead exemption and their ability to avoid a judicial lien are fixed as of the petition date. *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924), *In re Knudsen*, 80 B.R. 193 (Bankr.C.D.Cal. 1987). There is no evidence that the value of the McMahon Drive in 1988 equaled, much less exceeded, the 1991 sales price of $85,000. In all likelihood, the Fireman's Fund lien was security for an obligation in excess of the almost $44,000 paid at close of the 1991 sales escrow. The court can only conclude that on the petition date the value of the McMahon Drive property was less than the total of consensual liens and the $45,000 homestead. Thus, no equity was available to apply to SHP's liens. Because those liens impaired the Debtors' homestead equity, the liens must be totally avoided. *In re Galvan*, 110 B.R. 446 (9th Cir.BAP 1990). Since the avoidance of SHP's liens relates back to the petition date, any events subsequent to the filing of the petition could not revitalize them.

▪ No time limit is prescribed in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure for a debtor to bring a motion under 11 U.S.C. § 522(f)(1) to avoid a judicial lien that impairs an exemption. A debtor's delay in filing an avoidance motion is not in and of itself prejudicial, and absent actual prejudice, the motion can be brought at any time. *In re*

*Yazzie,* 24 B.R. 576 (9th Cir.BAP 1982). However, prejudice can be a matter of degrees. Where, as in this case, the creditor reasonably and in good faith incurred fees and expenses in responding to the unusual request of the debtors, it should be reimbursed. *Noble v. Yingling,* 37 B.R. 647, 651 (D.Del.1984). Consequently, the court will exercise its equitable powers and require the payment of $1,000 to SHP from the sales proceeds.

The foregoing shall constitute the court's findings of fact and conclusions of law.

An appropriate order will issue.

### ORDER GRANTING DEBTORS' MOTION TO REOPEN CASE AND AVOID JUDICIAL LIEN

The court having issued its Memorandum Decision, and good cause appearing;

IT IS HEREBY ORDERED that the judicial liens in favor of Summer Hills Plaza, which are evidenced by the abstracts of judgment recorded with the Sacramento County Recorder on January 13, 1988, documents #008263 and 008264, are avoided in respect to the proceeds from the sale of the real property more commonly known as 6025 McMahon Drive, Sacramento, California, and shall not attach to any property subsequently acquired by the above-named Debtors.

IT IS FURTHER ORDERED that Debtors' counsel shall pay the sum of $1,000.00 to Summer Hills Plaza from the sales proceeds held in his trust account as a condition precedent to the avoidance of the Summer Hills Plaza's judicial liens.