**In re Donald KELLEY, Debtor.**

**Donald Kelley, Appellant,**

v.

**Jeffry G. Locke, Chapter 7 Trustee, Appellee.**

**BAP No. NC–02–1591–JRYB.
Bankruptcy No. 02–10550.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 18, 2003.

Filed Aug. 27, 2003.

Edmund B. Dechant, Santa Rosa, CA, for Donald Kelley.

Michael C. Fallon, Santa Rosa, CA, for Jeffry G. Locke, Chapter 7 Trustee.

Before: JURY[1], RYAN, and BRANDT, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge.

After Donald Kelley ("Debtor") amended his Schedule C to claim an exemption in certain real property based on his declaration of homestead, Chapter 7[2] Trustee filed his objection to Debtor's exemption. After notice and a hearing, the bankruptcy court entered its order in favor of Trustee, finding that Debtor had abandoned his homestead by implication. Debtor then timely appealed. Although we disagree with the bankruptcy court's reasoning, we concur with its result.

We AFFIRM.

### I. FACTS

Debtor filed his voluntary Chapter 7 bankruptcy petition on March 8, 2002. In the Schedules, Debtor listed his interest in certain real property located at 901 South

---

1. Hon. Meredith A. Jury, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

Main, Angel's Camp, California ("Angel's Camp property").

By way of background, Debtor purchased the Angel's Camp property in 1982. While residing on the Angel's Camp property, Debtor recorded a declaration of homestead as to same. Debtor resided in the Angel's Camp property until 1995, when he moved to 1065 Darms Lane, Napa, California ("Napa property"). Debtor had no ownership interest in the Napa property, as it was rental in nature.

Debtor maintains that between 1995 and 2000, while living at the Napa property, he occasionally visited the Angel's Camp property to repair damage caused by vandals. Additionally, Debtor asserts that he has stored household furniture and certain personal possessions at the Angel's Camp property since the 1988 filing of Debtor's declaration of homestead to the present.

In 2000, however, Debtor's cousin moved into the Angel's Camp property and has since lived in that property, paying approximately $500.00 per month. Further, Debtor depreciated the Angel's Camp property on his federal income taxes for years 1998, 1999 and 2000; and in the five years prior to the filing of the instant bankruptcy case, Debtor had a bank account at the American Canyon Branch of West America Bank in Napa. He maintained no bank account in Angel's Camp.[3]

On his original Schedule C, Debtor claimed the Angel's Camp property exempt under California's "automatic" homestead law, as provided for in California's Code of Civil Procedure §§ 704.710 through 704.880. Trustee filed his objection to Debtor's claim of exemption on April 24, 2002, and Debtor filed his response to same on June 25, 2002. Subsequently, on September 25, 2002, the bankruptcy court issued a Memorandum of Decision sustaining the Trustee's objection, finding that the Trustee had established a prima facie case that Debtor had permanently moved to the Napa property and that Debtor had produced no credible evidence to the contrary.

On September 20, 2002, a transcript of Debtor's August 29, 2002 Rule 2004 examination was filed as item number 30 on the bankruptcy docket.

On October 1, 2002, Debtor filed an amended Schedule C, claiming the Angel's Camp property exempt pursuant to the declaration of homestead filed in 1988. Trustee filed an objection to the new claim of exemption on October 7, 2002. The bankruptcy court held a hearing on the second objection to exemption on October 18, 2002, and at that hearing advised the parties that they each had seven days to submit supplemental briefings on the matter. Per the case docket, on October 22, 2002 Debtor filed his response to Trustee's objection to the declared homestead exemption; and Trustee filed his supplemental brief on October 25, 2002.[4]

The bankruptcy court filed its Second Memorandum re Homestead Exemption on October 31, 2002. Noting that Debtor's "entire deposition testimony [was] consistent with complete abandonment of the

---

**3.** The preceding facts are undisputed by the parties.

**4.** Rule 8009 and Ninth Circuit BAP Rule 8006–1 require the Appellant to file transcripts. Although Appellant's excerpts of records are inadequate, in that the transcript of the 2004 examination was not included in the excerpts, the stipulated facts, when considered as a whole, still result in the reasonable conclusion that Debtor did not intend to retain the Angel's Camp property as his permanent residence. As such, the inadequate record on appeal does not create reversible error.

Angel's Camp property as a residence",[5] the bankruptcy court found that Debtor had abandoned his homestead by implication.

## II. ISSUES

1. Whether the evidence supports the findings of the trial court, entered on November 1, 2002, that Debtor Appellant was ineligible to claim a declared homestead under Cal. Civ. Proc. § 704.910 *et seq.* on the Angel's Camp property.

2. Whether the court erred in finding an implied abandonment of the otherwise valid declared homestead under Cal. Civ. Proc. § 704.910 *et seq.*, where Appellant, after recording the homestead, moved and was residing for an extended period of time in a rental unit upon which no homestead was available.

3. Whether the court should have also ruled that the recording of the declaration of homestead did not automatically entitle Appellant to the automatic homestead exemption set forth in Cal. Civ. Proc. § 704.730, and that to be entitled to the declared homestead exemption, Appellant must have first qualified for the automatic exemption.[6]

## III. STANDARD OF REVIEW

■ A bankruptcy court's order denying a claim of exemption is a final, appealable order. *See Preblich v. Battley,* 181 F.3d 1048, 1055–56 (9th Cir.1999). Thus, as the notice of appeal was timely filed, we have jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and (b).

■ We review legal issues de novo and the bankruptcy court's factual findings under a clearly erroneous standard. *Vil-*

*lage Nurseries v. Gould (In re Baldwin Builders),* 232 B.R. 406, 409–10 (9th Cir. BAP 1999)("When there are two permissible views of the evidence, the trial court's choice between them cannot be clearly erroneous."). Specifically, questions regarding the right of a debtor to claim exemptions are questions of law subject to de novo review, whereas the issue of a debtor's intent is a question of fact to be reviewed under the clearly erroneous standard. *Coughlin v. Cataldo (In re Cataldo),* 224 B.R. 426, 428–29 (9th Cir. BAP 1998). In bankruptcy actions, the federal courts decide the merits of state exemptions, but the validity of the claimed state exemption is controlled by the applicable state law. *In re LaFortune,* 652 F.2d 842, 846 (9th Cir.1981).

## IV. DISCUSSION

A. *The bankruptcy court's factual findings that Debtor had no intent to permanently reside in the Angel's Camp property were not clearly erroneous, and thus are not subject to reversal.*

■ Pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 4003(c), "in any hearing under this rule, [the] objecting party has the burden of proving exemptions are not properly claimed." FED. R. BANKR. P. 4003(c). As noted by the Ninth Circuit Court of Appeals, once the exemption has been claimed, FRBP 4003(c) provides that the objecting party has the burden of production and persuasion, and therefore must produce evidence to rebut the presumptively valid exemption. *In re Carter,* 182 F.3d 1027, 1029 (9th Cir.1999); *see also* FED. R. EVID. 301. The Ninth Circuit further

---

5. *See* Second Memorandum re Homestead Exemption, p. 2, lines 17–18.

6. This issue was included as an additional statement of issue in Trustee Appellee's opening brief.

noted that while the burden of persuasion always remains with the objecting party, if the objecting party can produce evidence to rebut the presumption, then the burden of production shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. *Carter*, 182 F.3d at 1029.

In civil cases, the objecting party need only provide proof sufficient to meet the "preponderance of the evidence" standard, as opposed to the more stringent "clear and convincing evidence" standard. *See In re Arnold and Baker Farms*, 177 B.R. 648, 654 (9th Cir. BAP 1994), *aff'd* 85 F.3d 1415 (9th Cir.1996), *cert. denied sub nom. Arnold and Baker Farms v. U.S.*, 519 U.S. 1054, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997)("Proof by the preponderance of evidence means that it is sufficient to persuade the finder of fact that the proposition is more likely true than not. Clear and convincing evidence is a higher standard requiring a high probability of success.").

Here, Appellee Trustee had the burden of producing evidence sufficient to rebut the presumed validity of Debtor's declared homestead exemption, and argued that Debtor had no intent to retain the Angel's Camp property as his permanent residence. Debtor countered, arguing that "[b]y his actions and statements, [Debtor] confirmed to the World [sic] that the Angels [sic] Camp property was a personal residence" and that Trustee failed to prove otherwise.[7] However, Trustee only had to show Debtor's lack of intent by a "preponderance of the evidence." The undisputed facts of the case are sufficient to support the bankruptcy court's conclusion that Debtor had indeed permanently moved to Napa. The court, in a position to observe the Debtor's credibility first hand,

opted to give greater weight to the circumstantial evidence of the stipulated facts rather than Debtor's direct testimony offered in support of his intention that the Angel's Camp property was his permanent residence. The applicable law clearly states that where the trial court could have made either decision on the same facts, the court's choice between them cannot be "clearly erroneous". *Baldwin*, 232 B.R. at 409. As such, the bankruptcy court's finding that Debtor had no intent to make the Angel's Camp property his permanent residence is not subject to reversal by this panel.

B. *The bankruptcy court erred in finding that Debtor had abandoned his declared homestead exemption by "implication".*

California's homestead exemption laws are set forth in Article 4 (§§ 704.710 through 704.850) and Article 5 (§§ 704.910 through 704.995) of Title 9 (Enforcement of Judgments), Division 2, Chapter 4 of the Cal.Civ.Proc.Code. The California Constitution, in Art. XX § 1.5, directs the legislature to protect a portion of homesteaded property from a forced sale. We have previously determined that the filing of a bankruptcy petition constitutes such a "forced sale" for these purposes. *See generally In re Pike*, 243 B.R. 66, 70 (9th Cir. BAP 1999).

The Article 4 homestead exemption, also known as the "automatic" homestead exemption, applies when a party has continuously resided in a dwelling from the time that a creditor's lien attaches until a court's determination that the exemption applies. *See* Cal.Civ.Proc.Code § 704.710(c).

The Article 5 exemption requires that a party record a declaration

---

**7.** *See* Appellant's opening brief, p. 9, lines 1–3.

stating that the residence is the "principal dwelling" of the declarant or his or her spouse. *See* Cal.Civ.Proc.Code §§ 704.920, 704.930(a)(3). The declared homestead exemption also provides certain additional benefits to the judgment debtor; e.g., exempt proceeds from a voluntary sale are protected. *See* Cal.Civ.Proc.Code § 704.960. Additionally, judgment liens do not attach to the equity protected by the declared homestead exemption. *See* Cal. Civ.Proc.Code § 704.950. Finally, protection of the homestead against the attachment of judgment liens may survive the deceased homeowner. *See* Cal.Civ.Proc. Code § 704.995.

■■■■■ The statutes explicitly set out certain manners by which a debtor may abandon his declared homestead exemption. Pursuant to Cal.Civ.Proc.Code § 704.980(a), a declared homestead can be abandoned by a declaration executed by the owner or an individual with authority to do so. Further, Cal.Civ.Proc.Code § 704.990(a) provides for the abandonment of a homestead by operation of law when the owner of the homesteaded property or person with authority to act on behalf of owner executes a new homestead declaration on a different property.

■■■■■ Additionally, California cases recognize abandonment of homestead by implication in certain limited circumstances. For example, a homestead declaration may be extinguished when the property is adversely possessed by a third person for a requisite time and character. *See Donnelly v. Tregaskis*, 154 Cal. 261, 264, 97 P. 421 (1908)(decided under the prior statute). Also, in *Webb v. Trippet*,

235 Cal.App.3d 647, 286 Cal.Rptr. 742 (1991), the California court of appeals held that an implied abandonment occurs whenever a homestead declarant establishes another residence as his principal dwelling.[8]

■■■■ The bankruptcy court seemed to focus on Debtor's intent to reside in the homestead, and decided that, upon finding that Debtor did not intend to reside in the Angel's Camp residence, Debtor abandoned his homestead by implication. The problem with this conclusion, however, is that neither the pertinent statutes nor the California cases recognizing an abandonment of a declared homestead support such a conclusion.

In its Second Memorandum of Decision re Homestead Exemption, the bankruptcy court cited *Webb* for the proposition that a homestead could be abandoned by implication where the debtor has shown no intention of using the property as a personal residence. The *Webb* court, however, reasoned that abandonment would be implied *specifically* because the automatic homestead exemption would apply to the new residence; the *Webb* court went on to state: "[a]bandonment is implied in such a case because the automatic residential exemption applies and provides the same monetary protection against [a] creditor's liens for the new residence." *Webb*, 235 Cal.App.3d at 652, fn. 2, 286 Cal.Rptr. 742. Here, Debtor has moved to a rental unit, to which the automatic homestead exemption would not apply; as such, *Webb* is inapposite to the facts of this case. Here, the Debtor has no new residence on which he may enjoy the benefits of a homestead exemption.

---

**8.** The *Webb* court was faced with the judgment debtor's abrupt disappearance from the residence; the court decided that "a useful balance can be struck between the competing interests [of the debtor's right to homestead and a creditor's interest in receiving payment on an unsatisfied judgment] by looking to the Probate Code, under which a missing person is presumed to be dead five years after his or her disappearance." *Webb*, 235 Cal.App.3d at 652, 286 Cal.Rptr. 742.

The bankruptcy court's conclusion that *Webb* supports the implied abandonment of a homestead whenever the debtor has shown no intention of using the property as a personal residence stretches *Webb's* holding too far. In sum, the bankruptcy court's reasoning for finding an abandonment of homestead here is an extension of the abandonment concept beyond where California law—statutory or case law—has taken it.

C. *Though Debtor was entitled to the additional declaration of homestead benefits conferred in Article 5 of the Cal.Civ.Proc.Code, Debtor's declaration of homestead did not automatically entitle him to the "forced sale" exemption protection conferred in Article 4's automatic homestead exemption.*

In his opening brief, Appellee sets forth an additional issue to be resolved—that is, whether the bankruptcy court should have decided that to be entitled to the benefits of a declared homestead, Debtor first needed to show his entitlement to the automatic homestead exemption. As we discuss below, Debtor did not first have to be entitled to the automatic homestead exemption before becoming eligible for the protections bestowed by declared homestead; a debtor may have Article 4 rights, Article 5 rights, *or both or neither*.

▆▆▆▆ The Ninth Circuit Court of Appeals has determined that a debtor is not automatically entitled to the protections provided in the Article 4 automatic homestead exemption upon showing a valid declaration of homestead under Article 5. Understanding this distinction is imperative, as the Article 4 exemption protections are applicable in a forced sale context (as here, where Debtor has filed his bankruptcy petition)—whereas the Article 5 protections only apply in voluntary sales.

In *In re Anderson*,[9] 824 F.2d 754 (9th Cir.1987), the Court of Appeals was faced with the task of interpreting the then-newly enacted Enforcement of Judgments Act (which became effective on July 1, 1983), and debtors' homestead exemptions under the new law. In that case, the debtors had resided in their Mendocino home at the time they filed their declaration of homestead, but did not reside there when they filed their bankruptcy petition. *Anderson*, 824 F.2d at 756. The debtors moved their household to Sonoma County for the purpose of attending college and rented the Mendocino house to others. *Id.* When the petition was filed, the Sonoma County home had little or no equity, and debtors scheduled a homestead exemption on the Mendocino home based on the recorded declaration of homestead. *Id.* at 755.

The Court of Appeals concluded that the debtors, having properly filed a declaration of homestead, were indeed entitled to the benefits of the Article 5 exemption. The court reasoned that "[a]lthough residency

---

9. The bankruptcy court declined to follow the Ninth Circuit's *Anderson* case. Indeed, in its Second Memorandum re Homestead Exemption, p. 2, lines 21–22, the bankruptcy court states: "The court has intentionally avoided applying *In re Anderson* [citations omitted], to this analysis." The court continued on p. 3, lines 4–7: "The court concludes that notwithstanding anything in *Anderson* continued residency is not a requirement for a valid California declared homestead exemption.

However, the court will sustain the trustee's objection in this case because the court finds that [Debtor] abandoned his homestead by implication." *See* Second Memorandum re Homestead Exemption, p. 2, lines 4–7. Though the bankruptcy court may feel that the rule in *Anderson* is "unclear", we note the fact that *Anderson's* holding has not been overruled, and so remains good law and binding precedent.

is required to properly declare an Article 5 homestead, moving away from the homestead does not destroy the exemption status .... The [California] Legislature has not expressed any intent to terminate declarations of homestead upon vacating the homestead premises, and we refuse to infer one." *Id.* at 757.

The debtors in *Anderson,* however, also argued that their declaration of homestead automatically entitled them to the benefits of the automatic homestead; particularly, the residential exemption set forth in Cal. Civ.Proc.Code § 704.730.

The debtors relied on the language in Cal.Civ.Proc.Code § 704.950(c) for their position, which states:

> (c) A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following: (1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.
> *(2) The homestead exemption set forth in [Cal. Civ. Proc.] Section 704.730.*

Cal.Civ.Proc.Code § 704.950(c) (2003)(emphasis supplied).

The Court of Appeals rejected the debtors' argument, noting in its dicta that "[t]he reference to § 704.730 in § 704.950 does not, as the debtors contend, incorporate all of the benefits in Article 4 into Article 5. Rather, the reference is the short hand method chosen by the legislature to give added protection to the Article 4 dwelling exemption by further exempting it from judicial liens." *Anderson,* 824 F.2d at 759.

Noting that "the recording of a declaration of homestead of a judgment debtor does not mean that the debtor is automatically entitled to the homestead exemption set forth in [Cal.Civ.Proc.Code] § 704.730", the court cited Cal.Civ.Proc. Code § 704.970 as support for its conclusion:

> "*Whether or not a homestead declaration has been recorded:* (a) Nothing in this article affects the right of levy pursuant to a writ of execution. (b) Any levy pursuant to a writ of execution on a dwelling ... and the sale pursuant thereto shall be made in compliance with Article 4 ... and the judgment debtor and the judgment creditor shall have all the rights and benefits provided by that article."

Cal.Civ.Proc.Code § 704.970 (2003)(emphasis supplied).

The Article 4 automatic homestead exemption protects a debtor's homestead from forced sale without a prior court order. *Anderson,* 824 F.2d at 757. As discussed in Section IV(B) *supra,* we have determined that the filing of a bankruptcy petition constitutes such a forced sale in the bankruptcy context. *See Pike,* 243 B.R. at 70. Article 5 only provides benefits *in addition* to those conferred by Article 4. Importantly, the additional benefits provided in Article 5, §§ 704.750, 704.760 and 704.995, apply only to *voluntary* sales. *See Knudsen v. Brock (In re Knudsen),* 80 B.R. 193, 196–97 (Bankr. C.D.Cal.1987).

In the instant case, Debtor properly recorded his homestead declaration in 1988 while residing at the Angel's Camp property; as such, pursuant to the Ninth Circuit's holding in *Anderson,* the bankruptcy court was incorrect in its determination that Debtor had abandoned his declaration of homestead by implication due to his moving away from the residence. Debtor is entitled to his declaration of homestead for the Angel's Camp property, regardless of the fact that he moved away from that residence.

In the context of bankruptcy, however, Debtor's declaration of homestead helps him not at all, as the additional benefits conferred in Article 5 would benefit him only in the situation of a *voluntary* sale. As stated by the Ninth Circuit Court of Appeals, "[a] debtor may have Article 4 rights, or Article 5 rights, or both or neither .... [T]here is no overlap between these rights." *Anderson*, 824 F.2d at 756. In the instant case, though Debtor is entitled to his declared homestead and the additional benefits therefrom, he is *not* automatically entitled to the benefits of the Article 4 homestead exemption and its protections against a forced sale.

We note that Debtor first attempted to exempt the Angel's Camp property by claiming such an automatic residential exemption in his original Schedule C. The Trustee filed an objection to Debtor's automatic homestead in April of 2002, and finding that Trustee had established a prima facie case that Debtor permanently moved to Napa, the bankruptcy court sustained Trustee's objection to Debtor's claim of automatic homestead exemption.

 Though the bankruptcy court's decision to sustain the objection to the automatic homestead exemption is not on appeal here, we feel that a discussion of the requirements for the residential exemption would be prudent in this situation. As noted in *Anderson*, the automatic homestead exemption can only be claimed by a debtor who resides (or who is related to one who resides) in the homestead property at the time of a forced judicial sale of the dwelling. *See* Cal.Civ.Proc.Code §§ 704.710(a), (b), (c), 704.720, 704.730, 704.740. Here, the involuntary or forced sale requirement of the automatic homestead exemption was satisfied with the filing of the bankruptcy petition.

 Pursuant to California law, the factors a court should consider in determining residency for homestead purposes are physical occupancy of the property and the intention with which the property is occupied. *See Ellsworth v. Marshall*, 196 Cal.App.2d 471, 474, 16 Cal.Rptr. 588 (1961). First, it is undisputed that Debtor did not reside at the Angel's Camp residence at the time of the petition's filing. Next, the bankruptcy court determined that on the undisputed facts, Debtor had no intent to make the Angel's Camp property his residence. As discussed *supra*, we will only reverse the bankruptcy court's findings of fact if they are "clearly erroneous"; since the trier of fact here could have reached either decision on the same set of facts, we should give deference to the bankruptcy court's determination. Thus, as found by the bankruptcy court, Debtor has failed to satisfy the "continuous residency" requirement as set forth in Cal.Civ.Proc.Code § 704.710(c); and therefore, Debtor is not entitled to the forced sale protections of Article 4's automatic homestead exemption.

## V. CONCLUSION

The bankruptcy court erred in finding that Debtor had abandoned his declared homestead exemption by implication. An application of the Ninth Circuit's holding in *In re Anderson*, 824 F.2d 754 (9th Cir. 1987) would have led to a determination that despite moving away from the Angel's Camp property, Debtor still retained a valid declaration of homestead. This declaration of homestead, however, provides no residential exemption in the bankruptcy context as Debtor is not entitled to the forced sale protections provided in Article 4. Debtor is not entitled to exemption protection in the context of a bankruptcy filing. The Trustee's objection to exemption was properly sustained.

AFFIRMED.