**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1219-GDKi |
| ANDY DIAZ, ) | Bk. No.   8:13-19194-CB |
| Debtor. ) | |
| _____ ) | |
| ANDY DIAZ, ) | |
| Appellant, ) | |
| v. ) | **O P I N I O N** |
| WENETA M.A. KOSMALA, Trustee, ) | |
| Appellee. ) | |
| _____ ) | |

Submitted on January 21, 2016
at Pasadena, California

Filed - March 11, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

---

Appearances:   Michael J. Carras of Conforti & Carras, APC argued on behalf of Appellant Andy Diaz; Erin P. Moriarty of the Law Offices of Weneta M.A. Kosmala argued on behalf of Appellee Weneta M.A. Kosmala, Trustee.

Before: GAN,[1] DUNN, and KIRSCHER, Bankruptcy Judges.

---

[1]   Hon. Scott H. Gan, Bankruptcy Judge for the District of Arizona, sitting by designation.

GAN, Bankruptcy Judge:

Debtor Andy Diaz ("Diaz") appeals from a final order granting the motion of the chapter 7[2] trustee, Weneta M.A. Kosmala ("Trustee"), to disallow Diaz's homestead exemption claimed under California law. The Trustee's motion was joined by Susan Wilson, Diaz's former mother in law and creditor in the case. Because the bankruptcy court incorrectly interpreted California homestead law, we VACATE and REMAND.

## I. FACTS

Prior to 2011, Diaz was married to Rebecca Wilson Diaz, and lived at a residence in Fullerton, CA. ("Property"). The couple had a son, who is now about eight years old. In October, 2011, Diaz suffered two major brain aneurysms which required multiple surgeries and initially left him in a coma for several weeks. After some time, Diaz awoke from the coma, but was unable to walk or talk. The aneurysms caused symptoms similar to a stroke. Diaz began recovering from the aneurysms, and after a few months, was released to the care of his mother, who lived across the street and six doors down from the Property. As Diaz's recovery progressed, he regained the ability to walk and talk, however, he remains unable to work and continues to receive Social Security Disability benefits. Diaz and Rebecca Wilson Diaz divorced in 2011. On November 9, 2013, Diaz filed his chapter 7 case.

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

Originally, Diaz claimed the California "wildcard" exemptions of Cal. Civ. Proc. Code § 703.140(b). After the Trustee moved for turnover of the Property in 2015, Diaz filed an amended schedule C to claim the automatic homestead exemption under Cal. Civ. Proc. Code § 740.730(a)(3). Because Diaz was disabled, the amount of the exemption was $175,000.[3]

Trustee objected to the claimed homestead exemption on the basis that Diaz did not reside in the Property on the date of filing, and that his absence could not be considered temporary for the purposes of claiming the exemption under California law. Specifically, the Trustee argued that Diaz lacked a foreseeable prospect of having the ability to resume occupancy of the Property.

The Trustee's objection was supported by declarations of Rebecca Wilson Diaz and her mother Susan Wilson, which are virtually identical. Their statements are as follows:

1. Diaz spent several months in hospitals and therapy facilities before being released to his mother's house;

2. Even 3½ years after the aneurysms, Diaz cannot care for himself;

3. Diaz is never left alone and requires constant care from his mother or brother Gilbert;

4. The Property is occupied by Diaz's brother and sister-in-law, Arthur and Priscilla;

5. Debtor has been allowed to spend the night at the

---

[3] Trustee has not contested Diaz's disability, therefore if he is eligible to claim the homestead exemption, the amount would be $175,000.

Property a few times, but only in the capacity of a "visitor" and with his mother and Gilbert continuing to provide care. In the morning, Diaz is returned to his mother's house;

6. The bulk of Diaz's personal effects remain at his mother's house;

7. Visitations with Diaz's son occur at his mother's house; and

8. All correspondence is sent to Diaz's mother's house and all interactions between Wilson Diaz and Diaz have taken place there.

Diaz responded to the Trustee's objection and argued that his condition had improved dramatically and that he had returned to living in the Property on a full-time basis. Diaz questioned the Trustee's reliance on Susan Wilson's testimony because as the estate's largest creditor, she would benefit from disallowing the exemption. Diaz supported his opposition with a declaration in which he made the following statements:

1. Diaz has made great strides in his recovery as evidenced by letters from his doctors (attached to the declaration and to a supplemental declaration);

2. Diaz maintains the Property as his address on his California Drivers License and voter's registration and receives all mail at the Property;

3. The mortgage and utilities at the Property are in Diaz's name;

4. Diaz's personal belongings are at the Property;

5. Diaz maintains a separate bedroom in the Property;

-4-

6. Arthur and Priscilla also live in the Property; and

7. Diaz is taking independent living classes.

Arthur and Gilbert Diaz also filed declarations stating that Diaz resides in the Property.

Trustee filed a reply to Diaz's opposition and argued that Diaz provided no evidence that his absence was temporary. Trustee argued that because Diaz was living nearby at his mother's house, and the Property was occupied by family members, Diaz did not need to change address information. The mortgage and utilities could remain in Diaz's name but be paid by Arthur and Priscilla. Trustee argues that because Diaz was living at his mother's house, he had no use for his furniture and other household items, which remained at the Property for the use of Arthur and Priscilla. Trustee again argued that Diaz was not able to live alone or care for himself, so his absence could not be temporary.

On June 30, 2015, the bankruptcy court held a hearing on the Trustee's motion. At the end of the hearing, the court granted the Trustee's motion to disallow the homestead exemption, ruling:

> And, you know, this is a sad situation, but I am going to grant the motion of the Trustee. This has to do with a very substantial homestead, the highest homestead that would be available. And I cannot find that the debtor is entitled to this homestead because at the time of the bankruptcy three and a half years ago he was not living in the property and it does appear to me that the folks that have benefitted from this three and a half years of bankruptcy are the relatives, so I am going to grant the motion.

June 30, 2015 Hr'g Tr., at 16:11-20.

After the ruling, Diaz's attorney asked if it would change the court's analysis if Diaz had been in a rehabilitation

hospital instead of recovering at his mother's house. In response, the court clarified the ruling:

> Well, I -- I'd have to look at the law. You're free to appeal. I'm not saying I enjoyed making this type of decision, but we do have to look at a snapshot at the time of filing. And there has been a substantial period of time that has gone by before he was able to move back into the house. And as I said, I'm also a little suspicious, I've got to tell you, that Mr. Diaz probably was not capable of making the decision to file bankruptcy and that the benefit totally went to his relatives who stayed in that house. And now – you know, now $175,000 homestead exemption seems like an incredibly large exemption for someone who hasn't lived in the house for a number of years.

June 30, 2015 Hr'g Tr., at 17:6-18.

On July 8, 2015, the bankruptcy court entered an order granting the Trustee's motion. Diaz timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). A bankruptcy court's order denying an exemption is a final, appealable order. Preblich v. Battley, 181 F.3d 1048, 1056 (9th Cir. 1999). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in interpreting the California homestead exemption statute?

## IV. STANDARDS OF REVIEW

"The right of a debtor to claim an exemption is a question of law that we review de novo." Elliott v. Weil (In re Elliott), 523 B.R. 188, 191 (9th Cir. BAP 2014). The bankruptcy court's interpretation of state exemption laws is reviewed de novo. Calderon v. Lang (In re Calderon), 507 B.R. 724, 728 (9th Cir.

-6-

BAP 2014). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. Id.

## V. DISCUSSION

When a debtor files a Chapter 7 petition, all of the debtor's legal or equitable interests in property become property of the estate, subject to the debtor's right to reclaim certain property as exempt. Schwab v. Reilly, 560 U.S. 770, 774 (2010). Section 522 provides a default list of exemptions, but allows states to opt out of the federal scheme and define their own exemptions. 11 U.S.C. §§ 522(b)(2), (b)(3)(A), (d). California has opted out of the federal exemption scheme. Cal. Civ. Proc. Code § 703.130. The bankruptcy court decides the merits of state exemptions, but the validity of the exemption is controlled by California law. LaFortune v. Naval Weapons Ctr. Fed. Credit Union (In re LaFortune), 652 F.2d 842, 846 (9th Cir. 1981). Therefore, we must interpret and apply California law to determine whether Diaz was entitled to claim the homestead exemption.

## A. California Homestead Exemption

Diaz has claimed the "automatic" homestead exemption of Cal. Civ. Proc. Code §§ 704.710-704.810. The automatic homestead exemption protects a debtor from a forced sale and requires that the debtor reside in the homestead property at the time of a forced sale. Redwood Empire Prod. Credit Ass'n v. Anderson (In re Anderson), 824 F.2d 754, 757 (9th Cir. 1987); Cal. Civ. Proc. Code §§ 704.710(a)-(c), 704.720, 704.730, 704.740. The filing of a bankruptcy petition constitutes a forced sale for purposes of

-7-

the automatic homestead exemption. Kelley v. Locke (In re Kelley), 300 B.R. 11, 21 (9th Cir. BAP 2003).

Section 704.710(c) provides:

> "Homestead" means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead.

Cal. Civ. Proc. Code § 704.710(c) was amended in 1983 to remove the word "actually," which appeared before "resided," in order to avoid a possible construction that a temporary absence, such as a vacation or hospitalization, would defeat a debtor's right to claim the exemption. See 17 Cal.L.Rev.Comm. Reports 854 (1983). Several courts have relied on this amendment to find that a debtor who did not physically occupy a property on the filing date would not be precluded from claiming the automatic homestead exemption if the absence was temporary. See, e.g., In re Pham, 177 B.R. 914, 918-20 (Bankr. C.D. Cal. 1994); In re Bruton, 167 B.R. 923, 926 (Bankr. S.D. Cal. 1994); In re Dodge, 138 B.R. 602, 607 (Bankr. E.D. Cal. 1992).

Trustee construes the homestead law as creating a rule with an exception. According to the Trustee, the rule is that a debtor must physically occupy the property on the filing date with an intent to remain there, subject to an exception for temporary absences. Trustee argues that Diaz admits that he did not reside in the Property on the petition date and urges us to evaluate Diaz's subsequent actions to determine whether his absence was temporary.

-8-

Diaz does not concede that the Property was not his residence on the filing date. Trustee's suggested construction improperly shifts the analysis from the Debtor's intent to reside in the Property and focuses instead on the Debtor's temporary absence and his intent to return to occupancy of the Property.

The purpose of the "continuous residency" requirement is to prevent a judgment debtor from moving into a property after the creation of a judgment lien or levy in order to establish an exemption. Hastings v. Holmes (In re Hastings), 185 B.R. 811, 814 (9th Cir. BAP 1995). However, the filing of the petition serves as both a hypothetical levy and as the operative date of the exemption. See Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1199 (9th Cir. 2012)("bankruptcy exemptions are fixed at the time of the bankruptcy petition"); Nadel v. Mayer (In re Mayer), 167 B.R. 186, 189 (9th Cir. BAP 1994)("[t]he filing of the petition constitutes an attempt by the trustee to levy on the property. It is this hypothetical levy the court must focus on in analyzing [the debtor's] entitlement to a homestead exemption.").

Consequently, in a case where the filing of the petition serves as the hypothetical levy, a debtor will always satisfy the continuous occupancy requirement of the California automatic homestead exemption because the date of attachment and the date of the court determination that the exemption applies occur simultaneously. Therefore, Diaz is entitled to claim the exemption only if he resided in the Property on the petition date.

Under California law, the relevant factors for determining if a debtor resides in a property are the physical fact of the occupancy of the property and the debtor's intention to live there. Kelley v. Locke (In re Kelley), 300 B.R. 11, 21 (9th Cir. BAP 2003) (citing Ellsworth v. Marshall, 196 Cal.App.2d 471, 474 (1961)).

Prior to the creation of the automatic homestead exemption in 1975,[4] California law provided that a party could obtain a monetary exemption for his or her family residence only by recording a declaration of homestead. Webb v. Trippet, 235 Cal.App.3d 647, 650 (1991). Actual residency was required to claim the declared homestead. See former Cal. Civ. Code § 1237 ("The homestead consists of the dwelling house in which the claimant resides. . . .").

California courts have long held that a lack of physical occupancy does not preclude a party from establishing actual residency and claiming the homestead, if the claimant intends to return. See, e.g., Michelman v. Frye, 238 Cal.App.2d 698, 703-04 (1965) (holding that a wife who was forced to leave the family dwelling could claim the homestead exemption despite not physically residing there, if she intended to return); Catsiftes v. Catsiftes, 29 Cal.App.2d 207, 210 (1938) ("residence can be changed only by the union of act and intent"); Guiod v. Guiod, 14 Cal. 506, 507-08 (1860) (holding that temporary removal for a

_____

[4] See former Cal. Civ. Proc. Code § 690.235, providing for an automatic "dwelling house" exemption; see also Krause v. Super. Ct., 78 Cal.App.3d 499 (1978). For a detailed history of California homestead exemptions, see Taylor v. Madigan, 53 Cal.App.3d 943 (1975).

-10-

specific purpose would not preclude a claim of homestead); Harper v. Forbes, 15 Cal. 202, 204 (1860) ("The necessities of the family, their maintenance, their health, or the education of the children, may often require a temporary change of residence. In such cases the premises will still retain their original character as a homestead."); Moss v. Warner, 10 Cal. 296, 297-98 (1858)(holding that a three-year absence from the homestead did not preclude claiming a homestead exemption because the family, who temporarily lived with acquaintances due to safety concerns, intended to return).

Conversely, physical occupancy on the filing date without the requisite intent to live there, is not sufficient to establish residency. In Ellsworth v. Marshall, the court determined that the Ellsworths did not "actually reside" in the subject property despite their physical occupancy. 196 Cal.App.2d 471 (1961). The court found that they had moved into the property and declared a homestead exemption the day before a scheduled sale and therefore did not have a "bona fide intention to make the premises their home or residence." Id. at 476.

Physical occupancy on the petition date is therefore neither a necessary nor sufficient condition of residency. However, whether the debtor physically occupies the property or not, the debtor must have an intention to reside there.

In the present case, the bankruptcy court interpreted the California homestead exemption as requiring physical occupancy on the filing date. The court's decision was also apparently based in part on the amount of the exemption, the finding that Arthur and Priscilla Diaz benefitted from the bankruptcy and would

-11-

benefit from the homestead exemption, and the finding that a substantial amount of time had gone by before Diaz resumed occupancy. There is no evidence that the court considered Diaz's intent to reside in the property on the filing date or evaluated the evidence supporting his intent.

When the bankruptcy court has applied an incorrect legal standard, we typically vacate the decision and remand so that the bankruptcy court can apply the correct law to the facts. Calderon v. Lang (In re Calderon), 507 B.R. 724, 733 (9th Cir. BAP 2014).

In this case, we find that the record was not sufficiently developed on the issue of Diaz's intent to make the Property his residence. Because the declaration evidence focused on Diaz's ability to physically occupy the Property without assistance, the record should be reopened to permit evidence of Diaz's intent on the filing date. While a debtor's intent can be inferred from surrounding circumstances, the debtor's inability to live unassisted, the amount of the claimed exemption, or the fact that family members may also benefit from the exemption are not relevant factors to the analysis.

**B.   Burden of Proof**

Trustee urges us to conclude that based on the Supreme Court decision in Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15 (2000), Diaz should bear the burden of proof to establish his right to claim the exemption.

Generally, a debtor's claimed exemption is presumptively valid, and the party objecting to a debtor's exemption has the burden of proving that the exemption is improper. Carter v.

-12-

Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); Rule 4003(c). If the objecting party can produce evidence sufficient to rebut the presumption of validity, then the burden of production shifts to the debtor to provide unequivocal evidence to demonstrate that the exemption is proper. Carter, 182 F.3d at 1029 n.3. The burden of persuasion always remains with the objecting party who must provide sufficient proof to meet the preponderance of the evidence standard. Id.

Trustee argues that in Raleigh, the Supreme Court held that the burden of proof is a substantive aspect of a claim, so in the absence of a federal interest requiring a different result, the state law allocation of the burden should apply in an objection to the claim in bankruptcy. 530 U.S. at 20-21. California has mandated the use of state exemptions in bankruptcy and has placed the burden of proof on the party claiming the exemption. See Cal. Civ. Proc. Code §§ 703.580(b), 704.780(a).

At least three bankruptcy courts have held that Raleigh requires the use of the California burden of proof in deciding an exemption objection. See In re Tallerico, 532 B.R. 774, 788 (Bankr. E.D. Cal. 2015); In re Pashenee, 531 B.R. 834, 837 (Bankr. E.D. Cal. 2015); In re Barnes, 275 B.R. 889, 898 n.2 (Bankr. E.D. Cal. 2002); see also Gonzalez v. Davis (In re Davis), 323 B.R. 732, 740 (9th Cir. BAP 2005) (Klein, J., concurring). We have previously acknowledged the possibility that Raleigh requires use of the state law burden of proof for state law exemptions, and have affirmed this procedure in an unpublished memorandum. Lopez v. Gill (In re Lopez), 2015 WL 5309580, *3 (9th Cir. BAP, September 3, 2015).

-13-

Trustee argues that the application of the state law burden of proof is further supported by the Ninth Circuit's holding in In re Jacobsen, that when exemptions are determined by state law, "'it is the **entire** state law applicable on the filing date that is determinative' of whether an exemption applies." 676 F.3d 1193, 1199 (9th Cir. 2012)(citation omitted).

In re Carter, was decided prior to Raleigh, and there is no subsequent Ninth Circuit authority addressing the burden of proof with respect to an exemption objection. We are persuaded by the reasoning in In re Tallerico and conclude that where a state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation.

## VI. CONCLUSION

The bankruptcy court incorrectly interpreted the California homestead exemption statute. For the reasons set forth above, we VACATE the bankruptcy court's order sustaining the Trustee's motion for disallowance of homestead exemption, and we REMAND for further proceedings consistent with this decision.