FILED

DEC 15 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   EC-15-1000-FDJu |
| | ) | |
| RHONDA STIJAKOVICH-SANTILLI, | ) | Bk. No.   13-33804 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DOUGLAS M. WHATLEY, | ) | |
| Chapter 7 Trustee; | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| RHONDA STIJAKOVICH-SANTILLI, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on November 19, 2015
at Sacramento, California

Filed – December 15, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

_____

Appearances:   Barry H. Spitzer of the Law Office of Barry H. Spitzer argued for appellant Douglas M. Whatley, Chapter 7 Trustee; Appellee Rhonda Stijakovich-Santilli argued pro se.

_____

Before: FARIS, DUNN, and JURY, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

**INTRODUCTION**

Appellant Douglas M. Whatley, Chapter 7 Trustee, appeals from the bankruptcy court's order overruling his objection to Appellee Rhonda Stijakovich-Santilli's claim of a homestead exemption. The bankruptcy court held that the Trustee's objection was untimely. The Trustee argues that the Debtor fraudulently asserted the claim of exemption, so the deadline for his objection was extended under Rule 4003(b)(2) of the Federal Rules of Bankruptcy Procedure.[1] We hold that the bankruptcy court erred as a matter of law by ruling that (1) the Trustee was not entitled to the extended objection period because he could have discovered the Debtor's misstatements earlier; and (2) evidence of the Debtor's subsequent false statements about her exemption claim could not support a finding that she fraudulently claimed the exemption in the first place. Accordingly, we VACATE the bankruptcy court's order and REMAND this case to the bankruptcy court for further proceedings.

**FACTS**

The Debtor filed her chapter 7 petition on October 25, 2013. She listed three single family homes in her Schedule A, including real property located on Beckenham Drive in Granite Bay, California ("Subject Property"). Her Schedule I listed "Other

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

monthly income" as $3,400 from a "Room Mate."  Initially, the Debtor claimed a $75,000 homestead exemption[2] on the Subject

---

[2] Under California law, a "homestead" is defined as

the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead.

Cal. Civ. Proc. Code § 704.710(c).  The amount of exemption is codified in section 704.730(a) of the California Code of Civil Procedure, which states, in relevant part:

The amount of the homestead exemption is one of the following:

(1) Seventy-five thousand dollars ($75,000) unless the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).

. . .

(3) One hundred seventy-five thousand dollars ($175,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:

. . .

(B) A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment. . . .

Cal. Civ. Proc. Code § 704.730.

3

Property, pursuant to section 704.950[3] of the California Code of Civil Procedure.[4] The Debtor submitted her electronically signed Declaration Concerning Debtor's Schedules with her petition, in which she attested that the schedules "are true and correct to the best of [her] knowledge, information, and belief." She later amended her exemption to $175,000 and again declared that the information in the amendments is "true and correct to the best of [her] information and belief."

The meeting of creditors concluded on January 21, 2014. There is no transcript of the meeting, but the Trustee

---

[3] Section 704.950 of the California Code of Civil Procedure states, in relevant part:

> (c) A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following:
>
> > (1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.
> >
> > (2) The homestead exemption set forth in Section 704.730.

Cal. Civ. Proc. Code § 704.950.

[4] The Debtor claimed the homestead exemption in her Schedule C under section 704.950 of the California Code of Civil Procedure. However, this section does not create a homestead exemption; rather, it concerns the interplay of the homestead exemption with judgment liens. The proper basis for the Debtor's claim of a homestead exemption would have been section 704.720, which provides that "[a] homestead is exempt from sale under this division to the extent provided in Section 704.800." Cal. Civ. Proc. Code § 704.720. However, neither party discussed the import of the Debtor's choice of and reliance on section 704.950, and we do not address this issue further.

4

represented that the Debtor "confirmed her only income is the social security and from a contribution from a roommate."

The Debtor received a discharge on February 5, 2014. The case remained open while the Trustee administered non-exempt assets. On or around April 2, 2014, the bankruptcy court granted the Debtor's motion to discharge her attorney, D. Randall Ensminger, and proceed in propria persona.

The Debtor filed a motion to compel abandonment of three single family residences, including the Subject Property ("Motion to Compel Abandonment"). Essentially, the Debtor claimed that, considering the liens on the properties and her exemption, there was no equity in the three properties for the estate. Regarding the Subject Property, the Debtor stated that she claimed a $175,000 homestead exemption due to a disability.

The Trustee did not oppose the Motion to Compel Abandonment as it related to the Subject Property and a second property, but opposed the motion as to a third property. The court granted the Motion to Compel Abandonment of the two properties, including the Subject Property.

On August 18, 2014, the Trustee filed his Objection by Chapter 7 Trustee to Debtor's Claim of Exemption in Real Property and Request for Relief from a Final Order on Abandonment of the Real Property ("Objection"), arguing that the Debtor fraudulently asserted the claim of exemption in the Subject Property. He contended that the Debtor did not reside at the Subject Property on the date she filed her chapter 7 petition and did not reside there at any time in 2013. The Trustee relied on the fact that, on her tax returns, the Debtor declared the Subject Property a

5

rental property for 365 days of the year, without any personal days. The Trustee further sought relief from the abandonment of the Subject Property, because, if the homestead exemption were inapplicable, then the Subject Property would have substantial equity and could add value to the estate.

In response, the Debtor argued that, although she received rental income from the Subject Property, she resided at the Subject Property during all of 2013: "Even though debtor has been receiving rental income with respect [to the Subject Property] during 2013, debtor had resided at [the Subject Property] during all of 2013." She represented that she "has been residing at [the Subject Property], as her principle [sic] dwelling, throughout 2012, 2013, and into 2014. The Debtor has also been renting to roommates at [the Subject Property] during 2012, 2013, and into 2014, in order for debtor to meet her income needs." She argued that renting the Subject Property to "roommates" does not prevent her "from claiming [the Subject Property] as her principle [sic] dwelling. Further, since debtor is renting to roommates in [the Subject Property], even though she is also residing at [the Subject Property], then debtor is correctly and accurately declaring [the Subject Property] as rental property on her Federal income tax returns . . . ."

In support of her position, the Debtor attached (1) a letter from her CPA, who confirmed that he advised her that the Subject Property "qualif[ies] as your primary residence partially based on your declaration that you have occupied it as your primary residence"; (2) a copy of a letter from the United States Social Security Administration sent to the Subject Property's address;

6

(3) a copy of her driver's license information request reflecting the Subject Property's address; and (4) copies of water bills for the Subject Property that are in the Debtor's name.

On September 24, 2014, the bankruptcy court heard arguments on the Trustee's Objection. The Debtor argued, "I just want to state that I do live at the house . . . ."

The court ultimately overruled the Objection. The court noted in its final ruling that, in the absence of fraud, the Trustee had until February 20, 2014 to object to the Debtor's claim of exemption. However, if the Debtor had fraudulently asserted the claim of homestead exemption, the Trustee's objection on August 18, 2014 would be timely under Rule 4003(b)(2).

The court stated that the problem with the Trustee's theory

> is that the question on this objection to exemption is not whether the debtor prepared her tax returns in accordance with applicable tax law and rules. It is whether the debtor resided in the Property on the date her petition was filed, October 25, 2013. . . . [P]resumably, she was living in one of the three properties she owns; the trustee has given the court no reason to believe it was not the one in which she has claimed the homestead exemption.

In other words, the bankruptcy court believed that the Debtor resided on the Subject Property, but misreported its status on her tax returns. The court continued:

> Here, the trustee's evidence goes only to the question of whether the debtor properly prepared her tax returns; the court finds that evidence to be insufficient to rebut the presumption that the debtor resided in the Property on the petition date. However, even if the trustee's evidence may be said to have overcome that presumption, the debtor has met her burden to produce evidence that she was living in the Property that day: she has testified unequivocally to that effect, thereby shifting the burden of proof back to the trustee, who, as the objecting party, always has

7

the burden of persuasion.

Thereafter, the Trustee conducted further investigation and gathered evidence that the Subject Property was not the Debtor's primary residence at the time she claimed the homestead exemption. The Trustee filed another objection on November 14, 2014 ("Renewed Objection") and presented further evidence, including: (1) gas utility records reflecting bills directed to Joseph A. Mendoza, Jr. and Joanna R. Mendoza; (2) Ms. Mendoza's declaration that she was a tenant at the Subject Property with her husband and two children from June 16, 2012 through June 29, 2014, and that, during that time, the Debtor did not reside at the Subject Property; and (3) county records showing that the Debtor did not file her homeowner's tax exemption for the Subject Property until March 3, 2014.

In response, the Debtor abandoned her argument that she was living on the Subject Property with "roommates" and admitted that she was living elsewhere. Instead, she argued that she had kept some of her personal belongings at the Subject Property. She claimed that her former attorney, Mr. Ensminger, had advised her that

> as long as she kept most of her personal belongings at [the Subject Property], and did not reside primarily at any other home, then the court would consider [the Subject Property] as her primary residence. Debtor based her decisions on her attorney's advice that renting [the Subject Property] to roommates/tenants and staying at various friends' homes and traveling did not preclude [the Subject Property] from being her primary residence. Accordingly, even though debtor had rented out [the Subject Property] to roommates/tenants, it was the only home that reasonably could be considered to be her primary residence.

In his reply, the Trustee attached another declaration by

8

Ms. Mendoza, who testified that the only personal property that the Debtor had left at the Subject Property was a spa, outdoor furniture, garden hoses, a ladder, an ironing board, wine racks, outdoor brass deer, remote controls, and some maintenance items, such as paint and light bulbs. The Trustee also pointed out that the Debtor mischaracterized the Mendozas as "roommates/tenants," despite the fact that they were clearly tenants who had entered into formal leases.

The bankruptcy court held a hearing on the Renewed Objection on December 17, 2014. The court focused on whether a false statement made well **after** the claim of exemption meets the requirements of Rule 4003(b)(2). At the outset, the Trustee agreed with the court that Rule 4003(b)(2) is to be read as requiring the Trustee to show that the Debtor fraudulently "asserted the exemption at the time the exemption was claimed." However, the Trustee argued that the Debtor, "from the very first filing, set to out deceive the court, the trustee and her creditors by stating she lived at" the Subject Property.

In its final ruling, the court again overruled the objection, holding that the Debtor did not "fraudulently assert[ ] the claim of exemption." The court stated:

> Based on the declaration of Joanna Mendoza submitted by the trustee, it appears to be an accurate statement that the debtor did not actually reside in the Property on October 25, 2013. However, that fact alone – which is virtually the only fact the trustee relies on – is not sufficient to establish that the debtor "fraudulently asserted the claim of exemption," as required for a finding that the trustee's objection is timely under Rule 4003(b)(2).

The court said that the Trustee should have "taken more concrete steps to determine whether the debtor was actually

9

living on the Property [after the meeting of creditors]." The court found that "the debtor's use of a post office box address . . . might reasonably have been expected to put the trustee on notice he should investigate the question of her actual residence further." The court said that

> the trustee was on notice from the debtor's schedules that she was receiving $3,400 per month in rent from the Property, almost the amount of the rents on the other two properties combined. A quick Zillow search would have revealed that the Property is a four bedroom, three bath house. The amount of the rent alone might reasonably have been expected to trigger further inquiry into whether the debtor was residing at the Property along with her tenants.

The court did not believe the Trustee's assertion that he only realized that the Debtor did not reside at the Subject Property when he received her 2013 tax returns. Rather, the Trustee had the Debtor's 2012 tax returns, which similarly claimed the Subject Property as a rental property for the entire year. It stated that the Debtor's 2012 tax returns, "on which the debtor claimed all three of her properties, including the Property, as rental properties for the entire year, might reasonably have been expected to trigger further inquiry into her actual residence."

The court further determined that the Debtor's reasons for claiming a homestead exemption in the Subject Property "also weigh against a finding of fraud. She states her attorney told her that 'as long as [she] kept most of [her] personal belongings at [the Property], and did not reside primarily at any other home, then the court would consider [the Property] as [her] primary residence.'" The court said that, "[i]n fact, given the debtor's two-year lease of the property to others, reserving no right of occupancy for herself, the validity of her claim to a

homestead exemption seems tenuous." However, the court stated that "it does not matter whether the debtor had a valid or even a colorable claim to the exemption. It matters only whether she fraudulently asserted the exemption, such that the late objection should be allowed under Rule 4003(b)(2)."

In sum, the court concluded that

> the debtor's testimony in response to the trustee's earlier objection to exemption that she "[has] been residing at [the Subject Property] . . . continuously for all of 2012, 2013 and all of 2014 through the date of this declaration" is quite troubling to this court. However, this testimony was given not at the time the debtor asserted the claim of exemption, but almost 11 months later, when she was defending against the trustee's objection, and long after the trustee's time to object, in the absence of fraud, had run. Thus, although this testimony appears to have been inaccurate, and possibly deliberately so, it does not support a conclusion that the debtor fraudulently asserted the exemption at the time it was claimed.

The court issued its order overruling the Renewed Objection on December 18, 2014. The Trustee timely filed his notice of appeal on December 30, 2014.

On March 18, 2015, the Trustee obtained a declaration from Mr. Ensminger wherein he refuted certain of the Debtor's statements regarding his representation of the Debtor. Mr. Ensminger attested that the Debtor had not informed him that she rented the Subject Property exclusively to others, but he recalls that she had told him that she resided at the Subject Property with roommates. He stated that he would not have advised her that the court would consider the Subject Property as her primary residence if she left personal belongings at the Subject Property. Finally, he said that he had been in the hospital and unable to respond to work-related e-mails until recently. It is

11

undisputed that the bankruptcy court did not have the benefit of Mr. Ensminger's declaration when it ruled on the Objection and Renewed Objection.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in overruling the Trustee's objection to the Debtor's claim of a homestead exemption in the Subject Property.

**STANDARD OF REVIEW**

The bankruptcy court's conclusions of law are reviewed de novo. Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1109 (9th Cir. 2010). We review exemption determinations de novo. Goswami v. MTC Distrib. (In re Goswami), 304 B.R. 386, 389 (9th Cir. BAP 2003); Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP 2003). De novo review requires that we consider a matter anew, as if it had not been heard before, and as if no decision had been rendered below. Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009).

The bankruptcy court's factual findings, for purposes of determining the validity of a homestead exemption claim, are reviewed under the clearly erroneous standard. In re Kelley, 300 B.R. at 16 (citation omitted). A factual finding is clearly erroneous only if we have a definite and firm conviction that a mistake has been committed. Banks v. Gill Distrib. Ctrs., Inc. (In re Banks), 263 F.3d 862, 869 (9th Cir. 2001) (quoting

12

<u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 573 (1985)).

**DISCUSSION**

**A.  Rule 4003(b)(2) extends the time for a trustee to object to a claim for exemption if a debtor fraudulently asserts the claim of exemption.**

A creditor or trustee must ordinarily "file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."  Rule 4003(b)(1).  Rule 4003(b)(2) creates a limited exception to this rule.  It provides that "[t]he trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption."  Rule 4003(b)(2).[5]

---

[5]  Rule 4003(b)(2) was enacted in 2008.  The advisory committee notes to the 2008 amendments state:

> Subdivision (b)(2) is added to the rule to permit the trustee to object to an exemption at any time up to one year after the closing of the case if the debtor fraudulently claimed the exemption.  Extending the deadline for trustees to object to an exemption when the exemption claim has been fraudulently made will permit the court to review and, in proper circumstances, deny improperly claimed exemptions, thereby protecting the legitimate interests of creditors and the bankruptcy estate.  However, similar to the deadline set in § 727(e) of the Code for revoking a discharge which was fraudulently obtained, an objection to an exemption that was fraudulently claimed must be filed within one year after the closing of the case.  Subdivision (b)(2) extends the objection deadline only for trustees.

Rule 4003(b) advisory committee's notes to 2008 amendment.

13

In this case, the meeting of creditors concluded on January 21, 2014. Thus, in the absence of fraud, the Trustee had until February 20, 2014 to object to the Debtor's claims of exemptions. The Trustee filed his Objection on August 18, 2014, nearly six months past the general deadline. Therefore, the Trustee's Objection is barred under Rule 4003(b)(1), unless the Debtor "fraudulently asserted a claim of exemption" under Rule 4003(b)(2).

As a general rule, a party who objects to a debtor's claim of exemption has the burden of proving that the exemption is not properly claimed, according to Rule 4003(c). If the objector can produce evidence to rebut the presumption of validity, then the burden of production shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is properly claimed. In re Kelley, 300 B.R. at 16-17; Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 (9th Cir. 1999). The burden of persuasion remains, however, with the objecting party. The quantum of proof is a preponderance of the evidence. In re Kelley, 300 B.R. at 17.[6]

---

[6] In the present case, the bankruptcy court applied the burden-shifting rule in Rule 4003(c). At least one California bankruptcy court has held that, if the debtor chooses a state law exemption, then state law allocates the burden of proof notwithstanding Rule 4003(c). See In re Tallerico, 532 B.R. 774, 780, 787-89 (Bankr. E.D. Cal. 2015). The parties have not briefed this issue, so we express no opinion and leave this issue to the bankruptcy court on remand.

14

**B.    "Fraudulently asserted" under Rule 4003(b)(2) should be construed with regard to the common law definition of fraud and § 523(a)(2).**

The bankruptcy court did not offer a definition of the phrase "fraudulently asserted."  Rule 4003(b)(2) does not define the term, and the case law is scant.  We begin with the standard rules of statutory interpretation, which apply equally to interpretation of the Rules.  See generally Rhodes v. Litig. Tr. of the Rhodes Cos., LLC (In re Rhodes Cos., LLC), 475 B.R. 733, 738 (D. Nev. 2012) ("To determine the meaning of a Federal Rule of Civil Procedure, courts apply rules of statutory interpretation.").  "[W]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms."  In re Trejos, 352 B.R. 249, 255 (Bankr. D. Nev. 2006), aff'd, 374 B.R. 210 (9th Cir. BAP 2007) (quoting Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004)).  Words and phrases used in statutes and rules should ordinarily be given their common meaning.  See Williams v. Taylor, 529 U.S. 420, 431 (2000) (The words of a statute are given their "ordinary, contemporary, common meaning," unless Congress intended to give them other meaning.).  Words that have special legal definitions should usually be given their common legal meaning.  See Henry v. United States, 251 U.S. 393, 395 (1920) ("The law uses familiar legal expressions in their familiar legal sense[.]"); In re LTV Steel Co., Inc., 264 B.R. 455, 473 (Bankr. N.D. Ohio 2001) ("When Congress uses a familiar legal expression and does not provide a definition, that connotes Congress' intent that the words be given their usual legal meaning." (citation omitted)).

15

At common law, the word "fraud" and its derivatives refer to (1) a representation (2) that the speaker knew was false when the speaker made the representation, (3) that the speaker made with the intent to deceive another, (4) on which the hearer justifiably relied, and (5) which caused damage to the hearer. See Rasidescu v. Midland Credit Mgmt., Inc., 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006) ("In California, the elements of common law fraud are: 1) misrepresentation of a material fact; 2) knowledge of falsity by defendant of the material fact; 3) intent of defendant to defraud plaintiff; 4) justifiable reliance of plaintiff on the material fact; and 5) damages." (citing City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 481 (1998))). We have applied this common law definition to the phrase "actual fraud" in § 523(a)(2).[7] See Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir. 1991) (employing the same five-part test); Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 64 (9th Cir. BAP 1998) (same); see also In re Trejos, 352 B.R. at 255 ("In determining the appropriate

_____

[7] Section 523(a)(2) provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -

      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

§ 523(a)(2)(A).

16

sense, investigation into ways in which the Bankruptcy Code uses the same or similar words is appropriate, especially when that usage comports with common usage." (citing Rousey v. Jacoway, 544 U.S. 320, 326-27 (2005))).

Thus, we hold that, to determine whether a debtor "fraudulently asserted" an exemption claim within the meaning of Rule 4003(b)(2), the bankruptcy court should apply the usual definition of fraud, except the damages requirement, which has no bearing on the question of exemptions.

The court must first identify the relevant "representation." Whenever a debtor asserts a claim of exemption, the debtor implicitly represents that the facts support that claim. When a debtor completes her schedules, she signs a declaration attesting to the accuracy of the information and expressly certifies under the penalty of perjury that all statements contained therein are true. See Suter v. Goedert, 396 B.R. 535, 541 (D. Nev. 2008) ("Statements made in bankruptcy schedules are executed under penalty of perjury and, when offered against the debtor, 'are eligible for treatment as [evidentiary] admissions.'" (quoting In re Bohrer, 266 B.R. 200, 201 (Bankr. C.D. Cal. 2001))). By extension, the debtor is also certifying that the factual predicates to each statement are true. For example, when a California debtor claims a homestead exemption, she implicitly attests that the property for which she is claiming an exemption is "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided

17

continuously thereafter until the date of the court determination that the dwelling is a homestead[.]" <u>See</u> Cal. Civ. Proc. Code § 704.710(c). In other words, a debtor making that claim represents that the underlying facts support the claim of exemption, including the facts that the alleged homestead was her "principal dwelling" and that she resided there at the relevant times.

In order to establish that the debtor fraudulently asserted the exemption, the objector must do more than show that the facts do not support the claim of exemption. The objector must also show that the debtor knew, at the time she claimed the exemption, that the facts did not support that claim, and that she intended to deceive the trustee and creditors who read the schedules.

**C.   The bankruptcy court erred as a matter of law in construing Rule 4003(b)(2).**

The bankruptcy court overruled the Trustee's objections to the Debtor's homestead exemption on the basis that (1) the Trustee had been put on notice of possible fraud and failed to investigate in a timely manner; and (2) the Debtor's later false statements and changing story regarding her place of residence did not prove that she fraudulently asserted the exemption **at the time she claimed it**. We conclude that the bankruptcy court misinterpreted Rule 4003(b)(2).

**1.   The bankruptcy court erred by imposing a duty to investigate upon the Trustee.**

First, the bankruptcy court faulted the Trustee for not taking steps earlier to inquire into the Debtor's situation and object within the thirty-day time period. We hold that the bankruptcy court erred in imposing a duty to investigate on the

18

Trustee. The question under Rule 4003(b)(2) is whether the debtor "fraudulently asserted" the exemption. As we explain above, the word "fraudulently" should be given its common law meaning. At common law (and under § 523(a)(2)(A), which incorporates the common law standard), the perpetrator of an alleged fraud cannot avoid liability by showing that the victim could have uncovered the fraud had the victim investigated more carefully. See Merchants Bank of Cal. v. Oh (In re Oh), 278 B.R. 844, 855 (Bankr. C.D. Cal. 2002) ("A person is justified in relying upon a misrepresentation even if he might have ascertained the falsity of the information through investigation. Although one cannot close his eyes and rely blindly, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud." (citing Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090-91 (9th Cir. 1996)); see also La Trattoria, Inc. v. Lansford (In re Lansford), 822 F.2d 902, 904 (9th Cir. 1987) ("Having intentionally misled the sellers in an area he knew was important to them, it is unseemly for Lansford now to argue that he should be excused from section 523 because the sellers believed him."); Salehsari v. Aalam (In re Aalam), 538 B.R. 812, 822 (Bankr. C.D. Cal. 2015) ("a plaintiff does not have a duty to investigate").

For purposes of fraud, the victim's behavior is only relevant to the issue of the victim's reliance. The victim need not show that he could not have discovered the fraud; rather, he must only show that he justifiably relied on the perpetrator's false representations.

Nothing in Rule 4003(b)(2) suggests that the drafters

19

intended to impose a duty on objectors to investigate promptly. If anything, the language of the rule points in the opposite direction: if the debtor fraudulently claimed an exemption, the trustee may object "at any time" up to the cutoff date.

In this case, the Debtor asserted a claim of exemption based on false predicates and later continued to mislead the Trustee and the court with further false statements. It would be inappropriate for the Debtor to benefit from the fact that the Trustee believed her false statements. Therefore, we hold that the bankruptcy court erred when it ruled that the Trustee failed to timely investigate the Debtor's claim of exemption.

The bankruptcy court relied heavily on In re James, 498 B.R. 813 (Bankr. E.D. Tenn. 2013), but we hold that James is distinguishable. In James, the court found, as a matter of fact, that "no actual fraud was committed by" the debtor. In re James, 498 B.R. at 816. The court expressed concern about the debtor's apparent overstatement of the amount he was entitled to exempt, but found that "the single overstatement of the value of the claimed exemption [does not rise] to the level of a fraudulent assertion of an exemption." Id. at 823. In this case, there is evidence which could support a finding of fraudulent assertion by the Debtor.

Taylor v. Freeland & Kronz, 503 U.S. 638, 643-44 (1992), is also inapposite. That decision stands for the proposition that, if a party in interest does not object to an exemption within the thirty-day time period in Rule 4003(b)(1), it cannot contest the exemption, regardless as to whether the debtor had a colorable statutory basis for claiming the exemption. Taylor provides no

20

guidance because it construed Rule 4003(b)(1), not Rule 4003(b)(2). Indeed, the Supreme Court rendered its decision in 1992, long before Rule 4003(b)(2) was promulgated.

Further, the Taylor rule is not as absolute as some might suggest. In this circuit, if the debtor makes a vague assertion of an exemption, the bankruptcy court can determine the extent to which the exemption claim is valid, even after the thirty-day deadline has run.

In Hyman v. Plotkin (In re Hyman), 967 F.2d 1316 (9th Cir. 1992), the debtors claimed a homestead exemption, but contended that their description of the exemption as merely "homestead," rather than "homestead exemption," indicated that they were claiming as exempt the entire homestead, rather than the limited dollar amount allowed by California law. The debtors argued that the trustee's failure to object timely to the claim of exemption rendered the real property fully exempt. The Ninth Circuit disagreed, stating that, because the debtors' schedules were vague and did not inform the trustee that the debtors were claiming an exemption on the full value of the property, "the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the Hymans were clearly entitled." In re Hyman, 967 F.2d at 1319.

We followed Hyman in Slates v. Reger (In re Slates), BAP No. EC-12-1168-KiDJu, 2012 WL 5359489 (9th Cir. BAP Oct. 31, 2012) (unpublished disposition). In Slates, the debtor claimed as exempt "possible disability benefits." The debtor did not disclose a pending administrative proceeding and a later lawsuit

21

concerning those benefits. The trustee found out about the action when the former employer contacted the trustee to attempt a settlement. The trustee moved for approval of the settlement of the bankruptcy estate's claims against the employer and for the sale of the estate's interest in the lawsuit. The trustee argued that, because the lawsuit had not been scheduled or exempted, or described in any way to give the trustee notice of the claims, it was property of the estate. The bankruptcy court agreed and (1) held that the lawsuit was properly a part of the estate and not exempt; and (2) approved the settlement and sale of the estate's interest. On appeal, the debtor argued that the lawsuit was exempt because (1) he had listed it in good faith on his Amended Schedule C; (2) he had described it sufficiently to put the trustee on notice; (3) the trustee had a duty to investigate the matter and failed to do so; and (4) the trustee had failed to object to the exemption. Id. at *6. The Panel noted the strict standard set forth in Taylor. Id. at *7. However, it stated "that neither this Panel nor the Ninth Circuit has interpreted Taylor as holding that failure by the trustee to object to a claim of exemption will always result in the debtor being entitled to a full exemption in the subject property. For example, the property may not be exempt if the debtor's schedules are ambiguous." Id. at *8 (citing In re Hyman, 967 F.2d 1316).

The Panel held that any ambiguity in the schedules should be construed against the debtor and that the debtor's schedules were not sufficient to put the trustee on notice of the lawsuit. It noted that the trustee "could have been more diligent in his investigation of this case," but disagreed that the trustee

22

should be equitably estopped from claiming ownership of the lawsuit. Id. at *10. It concluded that, because the trustee was not able to determine from reading the schedules that the debtor was claiming the lawsuit as exempt, the debtor failed to assert a valid exemption, and the trustee was not required to object to it under Rule 4003(b). Id. at *11.

Slates and Hyman are not controlling, because they dealt with exemption claims that were merely vague, as opposed to fraudulent. But both cases are instructive in two respects. First, they rejected the notion that, under Taylor, "failure by the trustee to object to a claim of exemption will always result in the debtor being entitled to a full exemption in the subject property." Id. at *8. Rather, the Ninth Circuit in Hyman held that any ambiguity in a debtor's schedules must be construed against her and may be the basis for an objection outside of the thirty-day period. Second, they also held that a trustee is entitled to rely on, and need not investigate, the information the debtor chooses to include in the schedules.

In this case, by claiming a homestead exemption in the Subject Property and attesting to the accuracy of the information contained in the schedules, the Debtor implicitly represented that she resided at the Subject Property and that it was her principal dwelling. Nothing in the schedules suggested otherwise. In addition, the Debtor unequivocally stated at the meeting of creditors that she resided on the Subject Property. Given this evidence, "the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected" to the claim of exemption. See In re Hyman, 967 F.2d

23

at 1319. The Trustee took the Debtor at her word and justifiably relied on the schedules and her declaration as to their accuracy.

Thus, the bankruptcy court erred when it held that the Trustee was not entitled to the extended objection period because he failed to investigate earlier.

**2. The bankruptcy court erred by discounting the Debtor's subsequent actions and statements as evidence of a fraudulent assertion of a claim of exemption.**

The bankruptcy court determined that, while the Debtor's statements regarding her residence may have been "inaccurate, and possibly deliberately so," it could not conclude that the Debtor fraudulently asserted the claim of exemption. It stated that the Debtor's prior false testimony that she resided at the Subject Property was "quite troubling to this court[,]" but "does not support a conclusion that the debtor fraudulently asserted the exemption at the time it was claimed."

We agree with the bankruptcy court that, to determine whether the debtor fraudulently asserted an exemption, one must look to the circumstances existing at the time of the assertion. We do not agree, however, with the court's decision that a debtor's later statements cannot help to establish that the debtor fraudulently asserted the claim of exemption in her initial filings.

It is hard to imagine a case in which the debtor's schedules, standing alone, prove that the debtor fraudulently asserted an exemption. To prove (for example) the debtor's knowledge of the schedules' falsity and intent to deceive, the objector will almost certainly have to offer extrinsic evidence. In an appropriate case, this extrinsic evidence may include the

24

debtor's subsequent statements and conduct.

The bankruptcy court's decision implies that a debtor's false testimony after the debtor files the schedules cannot establish that the debtor's exemption claims were fraudulent when made. But this cannot be correct. To choose the most extreme example, suppose that the debtor claimed an exemption, and later admitted her fraudulent knowledge and intent. Such a statement would undoubtedly be admissible to prove that the exemption claim was fraudulently asserted, even though the admission came after the initial assertion.

Therefore, we hold that the bankruptcy court applied an incorrect legal standard when it ruled that subsequent statements were not evidence of a fraudulent assertion of an exemption claim. Therefore, we remand this case to permit the bankruptcy court to apply the correct legal definition of the phrase "fraudulently asserted" and to consider whether the evidence shows that the Debtor fraudulently asserted the claim of exemption.

**D.    The Panel will not consider new evidence not in the record before the bankruptcy court.**

Finally, the Trustee requests that the Panel consider Mr. Ensminger's declaration or remand this case to the bankruptcy court for consideration of the new evidence that he claims "was not available due to the medical issues of Mr. Ensminger at the time the Debtor first brought up the argument of following [the] advice of Mr. Ensminger in regard to the homestead exemption . . . ." The Debtor argues that the Trustee should have brought a Civil Rule 60(b) request before the bankruptcy

25

court and that he has waived his right to seek admission of the declaration on appeal.

Except in rare cases where "'the interests of justice demand it,' an appellate court will not consider evidence not presented to the trial court[.]" Graves v. Myrvang (In re Myrvang), 232 F.3d 1116, 1119 n.1 (9th Cir. 2000) (quoting Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993); citing Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988)); see 16A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3956.1 (4th ed.) ("[A]s a general matter, the court of appeals will not consider [a] matter that is not part of the record on appeal. A litigant who wishes that newly discovered evidence had been considered by the district court should investigate the possibility of seeking relief from the judgment in the district court.").

In the present case, it is undisputed that the Trustee did not present Mr. Ensminger's declaration to the bankruptcy court, as he obtained the declaration over two months after he filed his notice of appeal. We do not think that this case presents such exceptional circumstances as to warrant the Panel's consideration of this new evidence in "the interests of justice." The Trustee could have sought a continuance of the hearing on the Renewed Objection while he attempted to obtain Mr. Ensminger's declaration; he could also have moved under Civil Rule 60(b)(2) or (3) to have the bankruptcy court consider the new evidence. In any event, the Panel declines to consider Mr. Ensminger's declaration in the first instance on appeal. The bankruptcy court is in the best position to consider all of the evidence and

26

make appropriate factual findings. We thus leave it to the Trustee to present the declaration or testimony of Mr. Ensminger to the bankruptcy court in the appropriate manner on remand.

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's orders overruling the Trustee's objections to the Debtor's homestead exemption and REMAND this case to the bankruptcy court for further proceedings consistent with our ruling.