[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14758
Non-Argument Calendar

_____

D.C. Docket No. 6:19-cv-00799-PGB,
Bkcy No. 6:17-bk-00294-KSJ

In re: GARY R. GARYBILL,
as Guardian of Catherine Eckley Bentley, deceased, and as
Personal Representative of the Estate of Catherine Eckley Bentley,
deceased,

                                                                                    Debtor.

_____

GARY R. GRAYBILL,
as Guardian of Catherine Eckley Bentley,

                                                                      Plaintiff - Appellant,

versus

ROBERT E. THOMAS,
AS CHAPTER 7 TRUSTEE OF THE ESTATE OF
CATHERINE ECKLEY BENTLEY,
SUSAN KOLB,
M.D.,

                                                                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 22, 2020)

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Gary Graybill, the personal representative of Catherine Bentley's (Debtor) estate, appeals the district court's affirmance of three rulings by the bankruptcy court in favor of Dr. Susan Kolb (Creditor) and Robert E. Thomas (Trustee). He argues that the district court erred when it affirmed the bankruptcy court's decisions to (1) sustain Trustee's objection to Debtor's homestead exemption; (2) overrule Debtor's objection to Creditor's claim; and (3) impose a constructive trust on Debtor's property. For the following reasons, we affirm.

I

This case's complexity warrants a brief overview of the bankruptcy court's detailed findings of fact. At the heart of everything is a valuable 1930 Cord Phaeton automobile (the Cord). The bankruptcy court found that "[n]othing in the record *credibly* establishes that [Catherine] ever gained a legal interest or title to the Cord." The Cord was registered to Lynford Bentley, Catherine's son, from 2005 through 2008.

2

In 2006, Dr. Kolb loaned $50,000 to Lynford and secured that loan with the Cord.  In late 2009, Dr. Kolb asked Lynford to deliver the Cord to her because he stopped paying on the loan, but Lynford died on December 8, 2009.  On December 1, 2013, Dr. Kolb sued Belinda Horne, Lynford's long-time girlfriend, in Georgia state court to recover the Cord or its value.

On May 30, 2014, Catherine moved the Cord from Georgia to Florida and stored it there.  The bankruptcy court found that, at least as of January 2015, Catherine had knowledge that Dr. Kolb contested the Cord's ownership.

On June 11, 2015, a judge in Georgia orally issued an interlocutory writ of possession entitling Dr. Kolb to possession of the Cord.  The bankruptcy court found that Horne told Catherine about it that night.  On June 27, 2015, the Cord was moved from storage at Catherine's direction and in connection with an auction company.  Not knowing the Cord's location and due to Catherine's refusal to disclose the Cord's location, Dr. Kolb filed financing statements in three counties, two in Georgia and one in Florida (Volusia County).  On July 20, 2015, a writ of possession was formally entered in the Georgia case awarding Dr. Kolb possession of the Cord "immediately."  On July 28, 2015, Catherine actually received pleadings that Dr. Kolb filed in Volusia County, Florida, specifically her Motion for the Entry of a Break Order, and she had actual knowledge that Dr. Kolb was seeking such an order.

On August 11, 2015, Catherine coordinated the auction sale of the Cord and untruthfully represented that she owned the Cord and had authority to sell it, despite actual knowledge of the ownership dispute and Dr. Kolb's right to possess the Cord. The Cord sold at auction for $137,500 on September 5, 2015. Catherine received $112,947.81 after payment of the cost of sale.

On September 14–15, 2015, the Volusia County Court entered Dr. Kolb's requested break order and writ of replevin. But by the time the sheriff found the old storage unit, the Cord was long gone. The county court entered an order adding Catherine as a defendant and directed her to show cause why she should not be held in contempt for her actions. She still refused to disclose the Cord's location.

On September 25, 2015, Catherine opened a Wells Fargo account and deposited the Cord's proceeds there. On January 4, 2016, she withdrew $97,681.21 of the proceeds to pay off the balance of her mortgage on her apartment home. The bankruptcy court found that she "used the proceeds from the Cord sale to pay off her home mortgage with actual knowledge of the break order, the writ of possession . . ., and after the [sheriff] specifically advised her of the Cord's contested ownership and was considering holding her in contempt of court."

4

In February 2016, Dr. Kolb sued Catherine for fraudulent transfer in Volusia County.  The next month, Catherine withdrew the rest of the Wells Fargo money (i.e., Cord proceeds) by cashing checks payable to herself.  In May 2016, Dr. Kolb added Catherine as a defendant in the Georgia case.  On January 13, 2017, Catherine filed her Chapter 7 bankruptcy petition and claimed a Florida homestead exemption; she filed for bankruptcy solely to defeat Dr. Kolb's claims.

## II

In bankruptcy cases, we sit as a second court of review and employ the same standards of review as the district court.  *Brown v. Gore (In re Brown)*, 742 F.3d 1309, 1315 (11th Cir. 2014).  We review factual findings for clear error and legal conclusions de novo.  *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 741 (11th Cir. 2000).  We address in turn the three rulings that Graybill challenges.

## A

First, we address whether Trustee objected timely and properly to Debtor's claimed homestead exemption under 11 U.S.C. § 522(o).  Federal Rule of Bankruptcy Procedure 4003(b) governs objections to a debtor's claim of exemptions.  Its general rule imposes a 30-day window for objections, after the later of the § 341(a) meeting of creditors or any amendment or supplement by the debtor.  Fed. R. Bankr. P. 4003(b)(1).  Except that "[t]he trustee may file an objection to a claim of exemption at any time prior to one year after the closing of

5

the case if the debtor fraudulently asserted the claim of exemption." *Id.* 4003(b)(2).

Graybill argues that the district and bankruptcy courts erred "as a matter of law" in concluding that Debtor "fraudulently asserted" her Florida homestead exemption claim within the meaning of Rule 4003(b)(2). Therefore, he says, Rule 4003(b)(1) would apply, meaning Trustee's objection was untimely. He asserts that neither court "provided any independent legal analysis to support [its] naked conclusion, which is clearly contrary to all legal authority available on [this] matter."[1]

Not so. Not only did the district court analyze this issue—it did so in reliance on, and consist with, law upon which Graybill himself relies. Rule 4003(b)(2) does not define "fraudulently asserted," and the case law is sparse. *See Whatley v. Stijakovich-Santilli (In re Stijakovich-Santilli)*, 542 B.R. 245, 255 (B.A.P. 9th Cir. 2015); *see also Moyer*, 582 B.R. at 700. "To determine the ordinary meaning of an undefined statutory term, we often look to dictionary definitions for guidance." *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 740 (11th Cir. 2020) (internal quotation mark omitted). "Fraud" is "[a] knowing

---

[1] Our analysis, *infra*, should assuage Graybill's concern that the courts decided against him solely based on Debtor's saga of "misconduct" and "prepetition scheme to defraud [Creditor]," *see Moyer v. Rosich (In re Rosich)*, 582 B.R. 694, 699–700 (Bankr. W.D. Mich. 2018), instead of the law.

6

misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Fraud*, *Black's Law Dictionary* (11th ed. 2019). And "assert" means "[t]o state positively." *Assert*, *Black's Law Dictionary* (11th ed. 2019).

As the district court did, and as both parties encourage us to do, we take note of *Whatley*'s analytical framework and find it persuasive. "The court must first identify the relevant 'representation.'" *Whatley*, 542 B.R. at 256. That representation need not be explicit: "Whenever a debtor asserts a claim of exemption, the debtor implicitly represents that the facts support that claim. . . . By extension, the debtor is also certifying that the factual predicates to each statement are true." *Id.* In *Whatley*, which involved a homestead exemption, "Debtor implicitly represented that she resided at the Subject Property and that it was her principal dwelling." *Id.* at 259. "The objector must also show that the debtor knew, at the time she claimed the exemption, that the facts did not support that claim, and that she intended to deceive the trustee and creditors who read the schedules." *Id.* at 256.

The district court followed that framework to a tee, and this case is no different than *Whatley*. Here, like in *Whatley* and unlike in *Moyer*,[2] we have a

---

[2] In *Moyer*, the trustee "[did] not identify a single factual misrepresentation in connection with the act of asserting the exemption during the case." 582 B.R. at 700. For this reason, the district court's holding does not conflict with *Moyer*; they involve different facts.

7

misrepresentation: the district court recognized that Debtor, by invoking the homestead exemption, implicitly and falsely represented "that she was entitled to the funds used to pay off her mortgage."[3]  To claim a Florida homestead exemption, as the record reflects, Debtor was required to describe her ownership, and she asserted that she owned the full and current value of her apartment—$280,000.  That assertion was predicated on her implicit misrepresentation.  Both Debtor's misrepresentation and its relationship to her homestead-exemption claim are functionally indistinguishable from what was at issue in *Whatley*.  Trustee need not have asserted "that the exemption claim itself was fictitious or that the claimed exemption was not available under . . . Florida law," as Graybill suggests.  Finally, the bankruptcy court clearly found that Debtor had the requisite knowledge and fraudulent intent at the time she claimed the homestead exemption.  We see no error here.

To wrap up this issue, we briefly address Graybill's residual arguments. Graybill's marquee case is *Law v. Siegel*, 571 U.S. 415 (2014), but its holding is inapposite.  Here, unlike in *Law*, neither court exercised inherent power nor violated a statute.  *See id.* at 422–23.  Nor did either act based solely on Rule

---

[3] The district court added, "At bottom, [Debtor's] homestead is stolen property." Arguably, this statement reaches a bit too far but not to the point of error.  The bankruptcy court explicitly sustained the objection "insofar as the homestead exemption is reduced by $112,767.04," and the district court did not disturb that decision.

4003(b)(2); both acted with an independent statutory basis or state-law basis defining the claimed exemption's scope for sustaining the objection, as *Law* requires. *See id.* at 425. Indeed, this case involves not one but two independent bases for sustaining Trustee's objection: 11 U.S.C. § 522(o) and Florida law defining the scope of its homestead exemption. So it accords with *Law* and *Law*'s progeny.

As for Graybill's argument that Trustee could not object properly under § 522(o) when traveling under Rule 4003(b)(2), rather than the general rule: it is misguided.[4] Under the plain text of both Rule and statute, Trustee objected properly. Therefore, we affirm as to this issue.

B

Next, we consider whether Creditor's claim of $133,141.12 was time-barred, as Graybill argues.[5] The bankruptcy court overruled Debtor's objection to this effect. It found that Creditor's claim arose from Debtor's fraudulent conduct.

---

[4] Graybill relied on *Moyer*. *See* 582 B.R. at 698. We decline to follow that court's reasoning for three reasons. First, nothing in Rule 4003(b)'s or § 522(o)'s text supports *Moyer*'s conclusion. Indeed, the court in *Moyer* reasoned solely that Congress's timing and awareness of existing law necessarily and extra-textually restricts § 522(o)'s availability to trustees. *See id.* Its logic is hard to follow and not persuasive. And, in any event, *Moyer* is not binding on us. Lastly, that portion of *Moyer* is dicta—if not dicta of dicta. *See id.* at 700 (holding that trustee did not show a factual misrepresentation so Rule 4003(b)(2) did not apply); *id.* at 700–01 (holding that a prior order resolving an earlier objection precluded trustee's second attempt at objection, which was late and without proper motion).

[5] Graybill does *not* argue that the bankruptcy court erred in valuing the claim. The basis for valuation only seems to matter to him for purposes of raising his statute-of-limitations argument. But nothing he says or cites supports his leaps in logic.

Debtor sold the Cord at auction in 2015, knowing that Creditor had a court-ordered right to possess the Cord.  The district court agreed and affirmed, concluding that Creditor had pursued her claim well within the Georgia Uniform Voidable Transactions Act (GUVTA)'s four-year statute of limitations because, assuming *arguendo* the earliest possible fraudulent conduct, Debtor moved the Cord in 2014 and Creditor sued Debtor in 2016.  *See* O.C.G.A. §§ 18-2-74, 18-2-79.

Graybill declined to raise an issue with this GUVTA analysis in his initial brief; indeed, he never once mentions GUVTA and effectively ignores the district court's reasoning.[6]  Instead, he bases all his arguments on an unsupported, counterfactual premise—that Creditor's claim *against Debtor* arose from an underlying debt that Debtor's *son* owed Creditor, not from *Debtor's* fraudulent conduct.  Graybill cites nothing to support that premise, and we independently see no reason or basis for it.[7]  At bottom, Graybill failed to explain adequately how the

---

[6] Graybill takes issue with the GUVTA analysis for the first time in his reply brief. Subject to exceptions not applicable here, "[o]ur longstanding case law rule is that an appellant who does not raise an issue in his opening brief may not do so in his reply brief." *United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (en banc).  So we decline to address those arguments, except to say that—in any event—we would run into the same problem that plagues Graybill's initial-brief arguments. *See infra* note 7.  And his reply-brief arguments are otherwise analytically underdeveloped.

[7] Graybill presupposes a legal relationship between Debtor and Creditor that the record does not support.  He insists that Debtor had superior rights to the Cord and bases all his arguments on this alternate reality.  But the parties already litigated Debtor's purported rights, and we cannot say that the bankruptcy court erred in concluding that she had no rights at any time.  For that reason, even if we entertained Graybill's underlying-debt arguments, they would still fail because he invokes law on Debtor's behalf that would not apply to her (and thus cannot

10

courts supposedly erred "as a matter of law" in calculating the statute of limitations based on Debtor's fraudulent conduct.  We affirm as to this issue.

C

Lastly, we address whether either court erred with respect to the constructive trust.  "A constructive trust arises from a situation where one party has defrauded another."  *City Nat'l Bank of Miami v. Gen. Coffee Corp. (In re Gen. Coffee Corp.)*, 828 F.2d 699, 703 (11th Cir. 1987).  In *General Coffee Corp.*, we reaffirmed Florida's long accepted, majority view "that a constructive trust arises as a matter of law when the facts giving rise to [a] fraud occur."  *Id.* at 701–02.  Under Florida law, an equitable lien may be imposed on a homestead "where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead."  *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1028 (Fla. 2001), *opinion after certified question answered*, 255 F.3d 1321 (11th Cir. 2001).

Here, the bankruptcy court clearly found that Debtor had engaged in a fraudulent scheme to deprive Creditor of the Cord or its proceeds, specifically found that "Debtor has been unjustly enriched by using the Cord sale proceeds to pay off her mortgage at the expense of [Creditor]," and thereby concluded that "[a] constructive trust is appropriate."  It primarily relied on *Havoco* and *Wiand v. Lee*

---

benefit her).  *See, e.g.*, *Remington-Rand, Inc. v. Emory Univ.*, 196 S.E. 58, 59 (Ga. 1938) (stating rules that apply to transferees or grantees).

11

*(In re Lee)*, 574 B.R. 286 (Bankr. M.D. Fla. 2017), to the extent *Lee* recognized

*Havoco*'s explanation of the bounds of the Florida homestead exemption.

The district court affirmed.  It reasoned that the bankruptcy court, as a court

of equity, had broad discretion to fashion an equitable remedy for Debtor's

fraudulent conduct.  *See Young v. United States*, 535 U.S. 43, 50 (2002).  And it

concluded that the bankruptcy court made all the findings required to impose an

equitable lien and constructive trust.  We agree.

Graybill's arguments lack merit or supporting authority.  The courts clearly

and correctly applied Florida law to impose the constructive trust and equitable

lien, and such a remedy was consistent with the bankruptcy court's final

judgment.[8]  Regarding objections, Graybill cites nothing that even suggests that a

bankruptcy court errs if it imposes a constructive trust or equitable lien on a

creditor's behalf based on a trustee's objection after a debtor has fraudulently

asserted an exemption claim.  In fact, Rule 4003(b)(2) contemplates an objection

only by the trustee.  And Graybill fails to cite anything that otherwise forbids the

---

[8] The bankruptcy court's final judgment reflects that the court decided for Creditor "on Counts I (§ 523(a)(2)(A)) and IV (§ 727(a)(2)(A))," both of which (as applicable here) require findings of a debtor's fraud.  Such a judgment accords with the court's findings of Debtor's fraudulent conduct.

bankruptcy court from doing what it did here.[9]  Therefore, we affirm as to this issue.

III

In conclusion, we see no error with respect to either court's rulings on Trustee's objection, Debtor's objection, or the constructive trust.  We affirm on all issues.

**AFFIRMED.**

---

[9] In a passing manner, Graybill invokes *Law v. Siegel* again, but we think either that *Law* is inapposite or that the bankruptcy court did not offend *Law* because there is no allegation that the court "contravened a specific provision of the Code," *see* 571 U.S. at 422, and the court clearly had an appropriate state-law basis for its decision, *see id.* at 425; *Havoco*, 790 So. 2d at 1028.